STATE OF NORTH CAROLINA v. NATHANIEL PHIFER

No. 35

(Filed 17 May 1979)

1. Searches and Seizures § 11— inventory of contents of impounded vehicle— failure to follow standard procedures—pretext *concealing investigatory motive*

 A warrantless search of the locked glove compartment of defendant's car after his arrest on the basis of an outstanding warrant for traffic violations

cannot be justified as a valid inventory search where: (1) the unilateral determination by one of the arresting Charlotte police officers to have the vehicle towed and inventoried was inconsistent with Charlotte standards on towing and inventory of impounded vehicles, which standards required the officer to seek permission from a superior to have the vehicle towed and, in any event, to give defendant an opportunity to make a disposition of his vehicle; and (2) the arresting officers knew that defendant was a drug dealer and it appears that the officers utilized the towing and inventory procedure as a "pretext concealing an investigatory motive." However, cocaine found in the glove compartment was not the fruit of the illegal inventory search where the record shows that, by the time the glove compartment was opened, the officers, through lawful means, had independently obtained probable cause to suspect that the glove compartment contained contraband.

2. **Searches and Seizures § 11— probable cause to search glove compartment of car**

   Officers had probable cause to search the locked glove compartment of defendant's car for narcotics without a warrant, and cocaine was lawfully seized from the glove compartment, where defendant was stopped for speeding and was then lawfully arrested on the basis of an outstanding warrant for his arrest on file at the police station; the arresting officer searched defendant's person as an incident of the arrest; the officer discovered $1,099 in bills of various denominations rolled up in defendant's left sock; defendant attempted, unsuccessfully, to throw away a key which was in his right shoe; the arresting officer gave the key to another officer who used it to open the glove compartment; and the officers knew that defendant had a reputation as a drug dealer.

3. **Criminal Law § 78; Searches and Seizures § 10— stipulation of no probable cause for search — invalidity**

   The courts are not bound by a stipulation that officers had no probable cause to conduct a warrantless search of the glove compartment of defendant's car, since stipulations as to the law are invalid.

DEFENDANT appeals from decision of the Court of Appeals, 39 N.C. App. 278, 250 S.E. 2d 309 (1979), upholding judgment of *Smith (David I.), S.J.,* entered at the 27 February 1978 Schedule "B" Session, MECKLENBURG Superior Court.

Defendant was tried upon a bill of indictment charging him with felonious possession of cocaine, a controlled substance listed in Schedule II of the North Carolina Controlled Substances Act. Upon the call of the case for trial defendant moved to suppress the evidence obtained from the glove compartment of his car. After a hearing and findings of fact the motion to suppress was denied, and defendant thereupon entered a plea of guilty, preserving his right under G.S. 15A-979(b) to contest on appeal the validity of the warrantless search of the glove compartment.

The State's evidence on the voir dire hearing tends to show that Police Officer W. F. Christmas saw defendant driving his 1972 Lincoln automobile on Beatties Ford Road near the intersection of Celia Avenue in Charlotte and clocked his speed at 48 miles per hour in a 35-mile-per-hour zone. When defendant made a right turn onto Booker Avenue, the officer stopped him at a vacant lot just off the traveled portion of Booker Avenue and on the city right-of-way. Officer Christmas stopped his patrol vehicle immediately behind defendant's vehicle. Defendant got out of his car and met the officer beside his patrol car. The officer asked for defendant's driver's license and advised him he had been speeding. Defendant replied that he did not have a license. At that time Officer T. G. Barnes arrived on the scene, recognized defendant as a known drug dealer, and so informed Officer Christmas. Officer Christmas asked Officer Barnes to run a driver's license check on defendant and also determine if any warrants were on file against him. The checks revealed that defendant was named Nathaniel Phifer and that there was on file a warrant for his arrest for other traffic offenses as to which defendant had failed to appear in court in obedience to citation. Officer Christmas thereupon advised defendant that he was under arrest and instructed Officer Barnes to start a vehicle inventory form on the car. Since there had been quite a few break-ins at the particular corner where defendant was stopped by the officers, it was adjudged that a wrecker should be called to tow defendant's car.

After Officer Barnes had been directed to commence an inventory on the vehicle, Officer Christmas instructed defendant to place his hands on the car so he could be searched. In searching him the officer found One Thousand Ninety-nine Dollars in bills of various denominations rolled up in defendant's left sock. The officer then asked defendant to remove his shoes, which he did. There was a key in his right shoe which defendant attempted to throw away but was prevented from doing so. Defendant was then handcuffed and placed in the patrol car. Officer Barnes used the key to open the glove compartment. Found therein was a plastic bag containing rice, some marijuana, including marijuana cigarettes, and a smaller bag of white powder which was later determined to be cocaine. Defendant's car was towed by a wrecker to the police garage. Thereafter a search warrant was

obtained to search the trunk of the car. Found in the trunk was a set of scales, other plastic bags, and residue of a white powdery substance, all of which were listed on the search warrant inventory.

Defendant offered no evidence and, upon his plea of guilty, was sentenced to five years in prison. The Court of Appeals found no error with Judge Arnold dissenting, and defendant appealed to this Court as of right pursuant to G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by Marilyn R. Rich, Assistant Attorney General, for the State.*

*Plumides, Plumides and Shuster by John G. Plumides, for defendant appellant.*

HUSKINS, Justice.

The State contends the warrantless search of the glove compartment of defendant's car was part of a valid police inventory of the car's contents. The State relies on *South Dakota v. Opperman*, 428 U.S. 364, 49 L.Ed. 2d 1000, 96 S.Ct. 3092 (1976), where the United States Supreme Court held that a police inventory search, when conducted pursuant to standard police procedures, was not unreasonable under the Fourth Amendment. In upholding the validity of such searches, the Court carefully delineated the context within which an inventory search constitutes a constitutionally permissible intrusion:

> "In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities.
>
> Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic

or threatening public safety and convenience is beyond challenge.

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger."

428 U.S. at 368-69 (citations omitted). The Court in *Opperman* reasoned that given the frequency with which police have occasion to impound automobiles in contexts totally divorced from the investigation of criminal activities, it is reasonable to permit them to inventory the contents of such automobiles and secure valuable items of property found within them until the automobiles are reclaimed by their owners. The Court also noted that an inventory tends to insure that explosives, ammunition, weapons, and other hazardous materials are not left unattended in impounded vehicles. In sum, the benefits in safety and protection of private property provided by a *standardized* police inventory outweigh the intrusion upon the diminished privacy interests of an owner whose automobile has been *lawfully* impounded.

Since an inventory search may be undertaken without a warrant or probable cause, it is potentially subject to abuse by police officers intent upon ferreting out evidence of criminal activity. Cognizant of this danger, the Court in *Opperman* made it clear that the validity of an inventory search under the Fourth Amendment is premised upon its being a benign, neutral, administrative procedure designed primarily to safeguard the contents of lawfully impounded automobiles until owners are able to reclaim them. Accordingly, the Court stressed that inventory searches should be "carried out in accordance with *standard procedures* in the local police department, a factor tending to insure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function." 428 U.S. at 375 (citations omitted). The Court also pointed out that standardized inventory procedures could not be utilized as a "pretext concealing an investigatory motive." *Id.* at 376. Finally, while generally approving

the reasonableness of standardized inventory searches, the Court noted that the reasonableness of any given inventory search depended upon the circumstances presented by each case. *Id.* at 372-73.

[1] Application of the above principles to the circumstances of this case leads us to conclude that the instant search cannot be justified as a valid inventory search. Examination of the record indicates that Officers Christmas and Barnes did not comply with pertinent portions of standard procedures in effect at the time of defendant's arrest for the towing, inventory, storage and release of impounded vehicles. See City of Charlotte Code §§ 20-20 through 24 (superseded 24 July 1978). Hence, at the time Officers Christmas and Barnes commenced their inventory of defendant's car they in fact had no authority to impound, tow or inventory the car.

Defendant was initially stopped for a speeding violation. He was placed under arrest when it was discovered that there was on file a warrant for his arrest for other traffic offenses as to which defendant had failed to appear in court in obedience to citation. Officer Christmas testified that in light of defendant's past failures to appear in court he determined that the better course of action would be to take defendant before a magistrate and have him post bond. Defendant's arrest raised the question of how to dispose of his car. Officer Christmas testified that since there had been quite a few break-ins at the particular spot where defendant's car was stopped he thought it best to inventory its contents and have a wrecker tow it. Accordingly, a tow truck was summoned and an inventory was commenced by Officer Barnes.

Review of pertinent portions of the procedures established by the City of Charlotte with respect to the impoundment of vehicles demonstrates that Officers Christmas and Barnes had no authority to summon a tow truck and commence an inventory on defendant's car. The Charlotte standards effective at the time of defendant's arrest expressly provide that whenever a traffic violator must be brought before a magistrate to post bond, "the violator's vehicle will not be towed for this purpose unless authorized by the officer's supervisor." The proper procedure in such instance is to have the violator drive the car to the magistrate's office, or if that is not advisable, to have an assisting

officer drive the car. Only if violator is unable to post bond are the officers authorized to have the car towed. Any towing prior to arrival at the magistrate's office must be authorized by a supervisor. Defendant was arrested for the purpose of having him appear before a magistrate; yet, at no time did Officer Christmas seek authorization from a supervisor to have defendant's vehicle towed to the magistrate's office. Nor did Officer Christmas consider whether his assisting officer, Barnes, should drive the car to the magistrate's office.

The Charlotte standards also give priority to another means of vehicle disposition which does not involve towing and inventory:

"B. Citizens should be allowed to make disposition of their vehicles when:

1. The driver or owner is on the scene.

2. In the officer's judgment the subject is capable of making such disposition.

3. Said disposition does not interfere with the case or create a traffic problem.

C. When an officer decides that conditions permit leaving the owner's or driver's vehicle parked in an area where it does not create a traffic problem he will fill out a Vehicle Disposition Form. The owner or driver will sign this form releasing the Department of all responsibility for the vehicle."

The record indicates that defendant was present at the scene of the arrest and was capable of determining what he wanted done with his vehicle. Yet, at no time did Officer Christmas consult with defendant as to how he wished to dispose of his vehicle. Rather, Officer Christmas, contrary to the standards, unilaterally determined what was to be done with the car. It should be noted that the primary reason given by Officer Christmas for having defendant's car towed was the danger of theft and vandalism. Defendant's car was stopped on a city right-of-way adjacent to a vacant lot. Thus, it is highly unlikely that a traffic problem would have been created had defendant desired to risk exposure to theft by leaving his car temporarily parked on the right-of-way, the vacant lot, or a nearby parking space.

Finally, due consideration of all the circumstances surrounding the disputed search and seizure leads to the inescapable inference that Officers Christmas and Barnes utilized the inventory procedure as a "pretext concealing an investigatory motive." *South Dakota v. Opperman, supra,* 428 U.S. at 376. Shortly after Officer Christmas had stopped defendant for speeding, Officer Barnes arrived on the scene and informed Officer Christmas that defendant was known to him as a drug dealer. Radio checks revealed an outstanding warrant on file for other traffic offenses which precipitated defendant's arrest. It is at this juncture that the inescapable inference of pretextual searches arises. Officer Christmas unilaterally determined that defendant's car had to be towed and asked Officer Barnes to commence an inventory of the vehicle's contents. The abrupt, unilateral determination to have the vehicle towed and inventoried was inconsistent with the Charlotte standards on the towing and inventory of impounded vehicles. Those standards required Officer Christmas to seek permission from a superior to have the vehicle towed and, in any event, to give defendant an opportunity to make a disposition of his vehicle. When the officers' disregard for Charlotte's towing and inventory standards is juxtaposed against their knowledge that defendant was a drug dealer, the inescapable inference arises that the towing and inventory procedure was used as a pretext to search defendant's car for contraband. The inference of pretextual search is supported by the testimony of Officer Barnes:

> "Q. And you knew that this man was a drug dealer, no question about that, is there?
>
> A. No, sir, I knew.
>
> Q. And you knew you all were looking for him and keeping out an eye for him and would stop him any chance you got to check him out, didn't you? Wouldn't you?
>
> A. Yes, sir.
>
> Q. You would have done that?
>
> A. Yes, sir.

Q. And that's exactly why he was stopped on this day in question to be searched to see if he had any drugs on him, wasn't it?

A. I didn't stop him.

Q. Well, you would have stopped him had you seen him, wouldn't you?

A. Yes, sir, I would have.

Q. Yes, sir. And the pretext of the inventory is no more than a cover for the lack of a search warrant, isn't it?

A. Sir, I don't know what the department . . . the department sets forth the guidelines and I just follow them."

In summary, the instant search cannot be justified as a constitutionally valid inventory search under the guidelines enunciated in *South Dakota v. Opperman*, supra. The Charlotte standards were not followed by the officers and therefore they had no authority to have defendant's car towed and no authority to commence a pre-tow inventory of the vehicle's contents. Additionally, the circumstances indicate that Officers Christmas and Barnes utilized the towing and inventory procedures as a "pretext concealing investigatory motives."

Our determination that the warrantless search of the glove compartment cannot be justified as an inventory search, however, is not dispositive of this appeal, for the contraband found in the glove compartment was not the fruit of the illegal inventory search. Review of the record indicates that by the time the glove compartment was opened the officers, through lawful means, had independently obtained probable cause to suspect that the glove compartment contained contraband. This is so because defendant, after being stopped for speeding, was lawfully arrested on the basis of an outstanding warrant for his arrest on file at the police station. After lawfully arresting defendant, Officer Christmas had the right to make a contemporaneous, warrantless search of the person of the accused. *Preston v. United States*, 376 U.S. 364, 11 L.Ed. 2d 777, 84 S.Ct. 881 (1964). *Accord, State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971). Thus, while Officer Barnes began to inventory the contents of defendant's car, Officer Christmas commenced a

valid search of defendant's person. During the course of that search Officer Christmas found One Thousand Ninety-nine dollars in bills of various denominations rolled up in defendant's left sock. The officer then asked defendant to remove his shoes, which he did. There was a key in the right shoe which defendant attempted, unsuccessfully, to throw away. Officer Christmas handed the key to Officer Barnes who then used the key to open the glove compartment. Prior to his receipt of the glove compartment key, Officer Barnes' inventory had proceeded no further than the unlocked areas of the passenger compartment and had not uncovered anything of significance.

Probable cause to search in the setting of this case may be defined as a reasonable ground of suspicion supported by circumstances sufficiently strong to lead a man of prudence and caution to believe defendant's car contained contraband of some sort. *State v. Allen*, 282 N.C. 503, 194 S.E. 2d 9 (1973); *State v. Campbell*, 282 N.C. 125, 191 S.E. 2d 752 (1972); *State v. Ratliff*, 281 N.C. 397, 189 S.E. 2d 179 (1972). " 'To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith. . . . The existence of "probable cause" . . . is determined by factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved.' " *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971), quoting 5 Am. Jur. 2d, Arrest §§ 44, 48. A warrantless search of an automobile is constitutionally permissible if the "automobile is stopped on or near a public street or highway and there is *probable cause to search at the scene. . . .*" *State v. Jones*, 295 N.C. 345, 245 S.E. 2d 711 (1978) (emphasis added). *Accord, Texas v. White*, 423 U.S. 67, 46 L.Ed. 2d 209, 96 S.Ct. 304 (1975) (per curiam); *Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970); *State v. Mathis*, 295 N.C. 623, 247 S.E. 2d 919 (1978); *State v. Legette*, 292 N.C. 44, 231 S.E. 2d 896 (1977); *State v. Allen, supra; State v. Ratliff, supra; State v. Simmons*, 278 N.C. 468, 180 S.E. 2d 97 (1971).

[2] Here, the totality of the circumstances would lead a man of prudence and caution to believe that the glove compartment of defendant's car contained contraband of some sort. The officer's

knowledge of defendant's reputation as a drug dealer, the substantial sum of money found rolled in defendant's sock, and defendant's attempt to throw away a key hidden in one of his shoes would alert any officer to the fact that defendant had something to hide. *Compare, State v. Ratliff, supra.* Given this probable cause, the warrantless search of the glove compartment was reasonable by Fourth Amendment standards and the fruits of the search were properly admitted into evidence. *Accord, Texas v. White, supra; Chambers v. Maroney, supra.*

Since the evidence sought to be suppressed was obtained through lawful means unrelated to the invalid inventory search, it follows that the "fruit of the poisonous tree" doctrine has no application to this case. *Accord, Wong Sun v. United States,* 371 U.S. 471, 485, 9 L.Ed. 2d 441, 83 S.Ct. 407 (1963); *Nardone v. United States,* 308 U.S. 338, 341, 84 L.Ed. 307, 60 S.Ct. 266 (1939); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 64 L.Ed. 319, 40 S.Ct. 182 (1920).

[3]  We are cognizant of the fact that at the suppression hearing the District Attorney stipulated that the officers had no probable cause to suspect that the glove compartment of defendant's car contained contraband. This Court, however, is not bound by the State's concession. The general rule is that stipulations as to the law are of no validity. *Quick v. Insurance Co.,* 287 N.C. 47, 213 S.E. 2d 563 (1975); *In re Edmundson,* 273 N.C. 92, 159 S.E. 2d 509 (1968); *Auto Co. v. Insurance Co.,* 239 N.C. 416, 80 S.E. 2d 35 (1954); *Moore v. State,* 200 N.C. 300, 156 S.E. 806 (1931); *Sanders v. Ellington,* 77 N.C. 255 (1877). Whether the facts in this case give rise to probable cause is a legal determination reserved for the courts. "[W]here a particular legal conclusion follows from a given state of facts, no stipulation of counsel can prevent the court from so declaring." Annot., 92 A.L.R. 663, 670 (1934). *Accord, Sanders v. Ellington, supra.*

For the reasons stated in this opinion, the result reached by the Court of Appeals is

Affirmed.