STATE OF NORTH CAROLINA v. BARRY ALLEN PEATEN

No. 914SC880

(Filed 6 July 1993)

**Searches and Seizures § 11 (NCI3d) — inventory search of vehicle — impropriety — failure to suppress seized items — error**

It was impermissible for officers to inventory, impound, or tow defendant's car, and items seized from the car during an inventory search should have been suppressed, since the vehicle was not obstructing traffic, was not a disabled or damaged vehicle, and did not threaten the public safety by some other means; the car was parked in the lot of a club which officers searched to determine whether taxpaid liquor was being sold; defendant was not present to make a disposition about the car which was presenting no traffic hazard; towing the car was in no way necessary to an arrest; the officer decided to tow the car so that it would not be vandalized; and there was no evidence which would establish that a sufficient period of time had elapsed before the police determined that the automobile was abandoned.

**Am Jur 2d, Evidence §§ 408, 412.**

Appeal by defendant from judgment entered 23 April 1991 by Judge Herbert Small in Sampson County Superior Court. Heard in the Court of Appeals 20 October 1992.

Defendant Barry Peaten was indicted on 2 January 1991 for felonious possession of a stolen firearm in violation of G.S. 14-71.1 on 15 September 1990. Prior to trial, defendant moved to suppress certain evidence seized during this search. The trial court denied the motion. On 23 April 1991, a jury found defendant guilty. He received a three-year sentence. From this judgment, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles J. Murray, for the State.*

*MacRae, Perry, Pechmann & Williford, by James C. MacRae, Jr., for defendant-appellant.*

STATE v. PEATEN

[110 N.C. App. 749 (1993)]

ORR, Judge.

Evidence for the State tended to show the following: On 14 September 1990, Agent Jessie Pull and Agent Bill Simmons, both working with the Harnett County Interagency Drug Task Force, along with other officers obtained a search warrant authorizing a search of Club 41, located on Highway 41, for taxpaid alcoholic beverages.

After receiving the search warrant, Agent Pull and other officers who entered Club 41 conducted a search of the individuals inside. There were one hundred to two hundred people in Club 41 at the time the search warrant was executed. Individuals who did not have anything on them were released. After processing persons who had been charged, Agent Simmons saw several vehicles that remained on the premises of Club 41. One of the vehicles that remained at the club was a BMW with a North Carolina registration number CXZ-2745, which belonged to the defendant.

According to their testimony, at that time, the officers were of the opinion that if the BMW was left on the lot, it would have been gone by morning or it would have been vandalized. Therefore, they impounded the vehicle and inventoried the vehicle contents at the scene because an independent contractor would be called to tow the vehicle. Agent Simmons gained entry to the passenger area through the sunroof to perform an inventory search. No contraband was found in the passenger area of the car.

Simmons then discovered that the trunk of the vehicle was unlocked and made a decision to open it and to perform an inventory search. Upon searching the trunk of the defendant's vehicle, Agent Simmons found a semiautomatic Armalight 180 2.23 caliber rifle, a weapons case and a 40 round magazine.

Agent Simmons had the serial number of the gun run through N.C.I.C. and the gun was found to have been stolen from a Mr. Kissinger in Hope Mills, North Carolina, on 16 March 1988. The next day, defendant appeared at the Interagency Drug Enforcement office inquiring as to the whereabouts of his vehicle and was arrested for possession of a stolen firearm.

Prior to trial, defendant moved to suppress the evidence of the items found in his automobile on grounds that the seizure and search of the automobile violated his rights under the Constitutions of the United States and North Carolina. The trial court

made findings of fact and concluded that neither the seizure of the automobile nor the subsequent search thereof was constitutionally invalid.

Defendant first argues that the trial court erred in denying his motion to suppress evidence obtained from the warrantless seizure of his automobile and thereafter denying his motion to dismiss. We agree.

Absent consent, or some form of exigent circumstances, a warrant based on probable cause is required for a valid search or seizure under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347 (1967). Thus, whenever the State has engaged in any kind of a warrantless search, it must demonstrate, with particularity, how the intrusion was exempted from the general constitutional demand for a warrant before evidence of the fruits of such a search may be admitted in a criminal prosecution. *See Arkansas v. Sanders*, 442 U.S. 753 (1979); *United States v. Jeffers*, 342 U.S. 48 (1951). It necessarily follows then, that when a vehicular search is based upon the inventory search exception, rather than probable cause, the State bears an especially heavy burden to show that the inventory procedure was authorized by a lawful seizure of the car, performed in a reasonable manner and not used as a pretext to bypass the rigorous demands of the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364 (1976); *State v. Phifer*, 297 N.C. 216, 254 S.E.2d 586 (1979); *State v. Vernon*, 45 N.C. App. 486, 263 S.E.2d 340 (1980).

The State contends that the officers made careful and complete inquiry as to the whereabouts of the owner of the car from all persons present and reasonably concluded that the car should be impounded because leaving the car on the premises of Club 41 would likely result in it being stolen or severely vandalized. Following the police department's written standard operating procedures for such circumstances, an inventory was made of the contents of the car that were accessible. The trunk of the car was unlocked and opened at the push of a button or a twist of a handle and very obviously was an area of the car that was accessible. According to the testimony, the police were not searching for anything, but rather compiling an inventory of items solely to establish a record of what was in the car and accessible to them at the time of their possession of the car and also to secure any such items from theft or vandalism.

The reason for the original search warrant of the nightclub was to determine whether taxpaid liquor was being sold in the club. Officer Simmons knew that the defendant's automobile was locked, in a private lot and presenting no traffic hazard. There is no evidence in the record as to how long the defendant's car had been left unattended. There were also other vehicles left unattended in the lot on that evening. The record does not show whether any effort was made to locate the owners of those cars and whether an effort was made to secure those cars.

Officer Simmons testified that he decided to tow the BMW "so it would not be vandalized." There is no evidence of any other circumstances which would bring the inventory and towing of this vehicle within the police department procedures. We find that the search is invalid as an inventory search, and the necessary probable cause and exigent circumstances to justify the search do not appear.

In *Phifer*, 297 N.C. 216, 254 S.E.2d 586 (1979), the Court established the applicable procedures for the inventory search and impoundment of an automobile. In *Phifer*, the police had stopped defendant for speeding in a 35 m.p.h. zone. An officer recognized defendant as a known drug dealer and ran a driver's license check on defendant and determined that there was a warrant for his arrest for other traffic offenses. The officer advised defendant that he was under arrest. The police decided that a wrecker should be called to tow defendant's car and proceeded to start a vehicle inventory on the car since there had been a few break-ins in the area. *Id.*

The State argued that the warrantless search of the glove compartment of defendant's car by the officers was part of a valid police inventory of the car's contents. The *Phifer* Court held, however, that based upon the language in *Opperman*, 428 U.S. 364 (1976), the search could not be justified as a constitutionally-valid inventory search.

In upholding the validity of such searches, the *Phifer* Court adopted a standard for impounding automobiles:

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve

STATE v. PEATEN

[110 N.C. App. 749 (1993)]

evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. . . ."

*Phifer*, 297 N.C. at 219, 254 S.E.2d at 587 (quoting *Opperman*, 428 U.S. at 368-69).

The *Phifer* Court further noted that police have the authority to "remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.*

Application of the above principles to the circumstances of the case *sub judice* leads us to conclude that had the automobile in question been obstructing traffic, been a disabled or damaged vehicle, or threatened the public safety by some other means, then the impoundment and subsequent search would be justified as a valid inventory search. However, this is not the case. Here, as in *Phifer*, the officer who searched the defendant's car completely failed to follow the standard procedures for towing and inventory established by the Police Department. Officer Simmons, who searched defendant's car, testified at trial that defendant was not present to make a disposition about the car, that the car was presenting no traffic hazard, parked as it was in the Club 41 parking lot, and that towing the car was in no way necessary to an arrest. Officer Simmons also testified that he decided to tow the BMW so it would not be vandalized. Nowhere in the procedure for towing and inventory does this appear as a ground upon which an officer may tow an automobile and thereby be authorized to perform an inventory search.

Further, the record is void of any evidence which would establish that a sufficient period of time had elapsed before the police determined that the automobile was abandoned. To authorize impoundment and a subsequent inventory search of an automobile that presents no traffic hazard without requiring that more time elapse than in the present case before the car is deemed abandoned would be to authorize the police to impound and search any and every car for which the owner cannot immediately be found.

Therefore, we find that it was impermissible for the officers to inventory, impound, or tow defendant's car. For the reversible

error committed by the court in denying his motion to suppress, defendant is entitled to a new trial.

Reversed and Remanded.

Judge EAGLES concurs.

Judge JOHN concurs in the result only without separate opinion.