Justice ERVIN dissenting.
As a result of its determination that "[d]efendant properly stipulated to the facts of his prior offense and that those facts supported its B1 classification," the Court has decided that the trial court properly classified defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony for purposes of calculating defendant's prior record level based upon the parties' stipulation. In view of my belief that the classification of defendant's prior second-degree murder conviction as a Class B1 felony required the making of a legal determination and that the record presented for our review in this case lacks any support for the trial court's determination to classify defendant's prior **528 second-degree murder conviction as a Class B1 felony other than the parties' stipulation, I believe that the Court of Appeals correctly held that the trial court erred in the course of calculating defendant's prior record level. As a result, I respectfully dissent from the Court's decision in this case.
As the record clearly reflects, defendant entered a plea of guilty to second-degree murder on 1 July 1994. At the time that defendant was convicted of second-degree murder, all second-degree murders were classified in the same manner for sentencing purposes. In 2012, the General Assembly modified the manner in which the offense of second-degree murder was classified for sentencing purposes, with a judge sentencing a defendant who has been convicted of second-degree murder being required to decide whether the defendant should be sentenced as a Class B1 felon or a Class B2 felon, with that determination hinging upon the type of malice with which the defendant acted at the time that he committed the murder and whether the murder proximately resulted from the distribution of certain controlled substances.
On 14 September 2015, defendant entered a guilty plea to a number of new offenses committed in 2013, resulting in the entry of the judgment that is at issue in this case. At the time that defendant was sentenced for these new convictions, the trial court had to determine defendant's prior record level which, in turn, required the trial court to determine how many prior record points should be assigned to defendant's 1994 second-degree murder conviction. In order to make that determination, the trial court was required to decide whether defendant's second-degree murder conviction should be classified as a Class B1 or a Class B2 felony, with that decision necessarily resting upon a determination of the type of malice with which defendant acted at the time that he committed the second-degree murder for which he was convicted in 1994 given the absence of any indication in the record that defendant's second-degree murder conviction *336 in any way resulted from the distribution of opium, cocaine, or methamphetamine.[1] As I read the record, **529 the only basis upon which the trial court could have made this determination was the parties' stipulation that defendant's prior second-degree murder conviction should be assigned nine, rather than six, prior record points for purposes of calculating defendant's prior record level.
As a general proposition, "stipulations as to matters of law are not binding upon courts." State v. McLaughlin , 341 N.C. 426, 441, 462 S.E.2d 1, 8 (1995) (citations omitted), cert. denied , 516 U.S. 1133, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996) ; see also State v. Fearing , 315 N.C. 167, 174, 337 S.E.2d 551, 555 (1985) (stating that the trial court erred by accepting the parties' stipulation that a child was not competent to testify as a witness given the trial court's failure to make an independent competency evaluation based upon a personal evaluation of the child); State v. Phifer , 297 N.C. 216, 226, 254 S.E.2d 586, 591 (1979) (stating that this Court was not bound by the State's stipulation that investigating officers lacked probable cause to suspect that contraband would be found in the glove compartment in a defendant's motor vehicle given "[t]he general rule" that "stipulations as to the law are of no validity" (first citing Quick v. United Benefit Life Ins. Co. , 287 N.C. 47, 56-57, 213 S.E.2d 563, 569 (1975) ; then citing In re Edmundson , 273 N.C. 92, 97, 159 S.E.2d 509, 513 (1968) ; then citing U Drive It Auto Co. v. Atl. Fire Ins. Co ., 239 N.C. 416, 419, 80 S.E.2d 35, 38 (1954) ; then citing Moore v. State , 200 N.C. 300, 301, 156 S.E. 806, 807 (1931) ; and then citing Sanders v. Ellington , 77 N.C. 255, 256 (1877) (stating that, "[w]hen the parties agree upon a matter of law, they are not bound by it, and it is the duty of the judge to interfere and correct the mistake, if there be one, as to the law, for he is presumed to know the law, and it is his province to declare it") ) ).
For better or worse, the difference between a matter of fact and a matter of law is not always clear. In re Helms , 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (stating that "[t]he classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult"). On the one hand, "[f]acts are things in space and time that can be objectively ascertained by one or more of the five senses or by mathematical calculation" and, "in turn, provide the bases for conclusions." State ex rel. Utils. Comm'n v. Pub. Staff , 322 N.C. 689, 693, 370 S.E.2d 567, 570 (1988) (citing State ex rel. Utils. Comm'n v. Eddleman , 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987) ). On the other hand, "any determination requiring the exercise of judgment or the application of **530 legal principles is more properly classified a conclusion of law." State v. Sparks , 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008) (quoting In re Helms , 127 N.C. App. at 510, 491 S.E.2d at 675 (first citing Plott v. Plott , 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985) ; then citing Quick v. Quick , 305 N.C. 446, 452, 290 S.E.2d 653, 657-58 (1982) ) ). As a result, a valid stipulation must concern "things in space and time that can be objectively ascertained by one or more of the five senses," Utils. Comm'n v. Pub. Staff , 322 N.C. at 693, 370 S.E.2d at 570, rather than a "determination requiring the exercise of judgment or the application of legal principles," Sparks , 362 N.C. at 185, 657 S.E.2d at 658 (quoting In re Helms , 127 N.C. App. at 510, 491 S.E.2d at 675 ).
A determination of the type of malice with which defendant acted at the time that he committed the killing that led to his 1994 conviction for second-degree murder required the sentencing judge to ascertain both what the defendant did and the legal effect of *337 the defendant's actions. Although the first of these two determinations, which requires an examination of what happened in space and time, is a factual one, the second will, in at least some circumstances, require the sentencing judge to make a legal determination as to what the available factual evidence suggests that the theory of guilt that led to the defendant's conviction would have been. In view of the fact that there has been no prior determination of the theory of malice upon which defendant's second-degree murder conviction rested in this case, the trial court's decision concerning the manner in which defendant's second-degree murder conviction should be classified for the purpose of calculating his prior record level in this case necessarily requires both a factual and a legal determination, with the former being something to which the parties could properly stipulate and the latter being something to which they could not properly stipulate.
As the Court notes, the parties to a criminal action may stipulate to the fact that the defendant had previously been convicted of a criminal offense. N.C.G.S. § 15A-1340.14(f)(1)(2017). Although "conviction" is not statutorily defined in or for purposes of N.C.G.S. 15A-1340.14, that term is ordinarily understood as "the ascertainment of the defendant's guilt by some known legal mode, whether by confession in open court or by the verdict of a jury." Smith v. Thomas , 149 N.C. 100, 101, 62 S.E. 772, 773 (1908) (citations omitted); see also Conviction , Black's Law Dictionary (10th ed. 2014) (defining "conviction" as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime"). Thus, the "conviction" to which a defendant is **531 entitled to stipulate in accordance with N.C.G.S. § 15A-1340.14(f)(1) is the fact that he or she had been judicially determined to have committed a specific offense rather than the body of factual information underlying that conviction. Although a determination that a defendant has been judicially determined to have committed a specific offense is, in almost all instances, sufficient to permit a subsequent sentencing judge to determine precisely how many prior record points should be assigned to that defendant based upon that prior conviction, the 2012 amendments to N.C.G.S. § 14-17(b) providing for the classification of certain second-degree murders as Class B1 felonies and other second-degree murders as Class B2 felonies preclude a trial judge from determining how many prior record points should be assigned to a defendant based solely upon the fact that he or she had a prior second-degree murder conviction given that such convictions result in the assignment of different numbers of prior record points depending upon whether the conduct that resulted in the defendant's conviction was encompassed within N.C.G.S. § 14-17(b)(1) or N.C.G.S. § 14-17(b)(2). Although defendant could have properly stipulated to the facts necessary to make the required determination concerning the extent to which his prior second-degree murder conviction was for a Class B1 or a Class B2 felony, the record does not reflect that he ever did so. Instead, the parties simply stipulated to the legal conclusion that defendant's conduct should be treated as coming within the confines of N.C.G.S. § 14-17(b)(1) rather than N.C.G.S. § 14-17(b)(2). For that reason, I am unable to avoid the conclusion that the trial court's decision to classify defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony rested solely upon an acceptance of the parties' legal determination that various facts never presented for the trial court's consideration by stipulation or otherwise sufficed to establish that defendant's conduct was described in N.C.G.S. § 14-17(b)(1), rather than N.C.G.S. § 14-17(b)(2), instead of resting upon an independent analysis of the applicable facts in light of the relevant legal principles. As a result, I am also unable to avoid the conclusion that the trial court's decision to assign nine, rather than six, prior record points to defendant's conviction rested upon an unlawful stipulation to a matter of law.[2] *338 **532 In reaching a contrary conclusion, the Court asserts that defendant's stipulation that his second-degree murder conviction should be classified as a Class B1, rather than a Class B2, felony is "like a stipulation to any other conviction" and notes that defendant "does not challenge the other five stipulations [to prior convictions] as improper." Although the parties to a criminal action are clearly authorized to stipulate to the fact that the defendant has previously been convicted of a particular criminal offense, N.C.G.S. § 15A-1340.14(f)(1), and while the parties to this case did properly stipulate to the existence of all the other convictions reflected upon the prior record worksheet submitted for the trial court's consideration, the classification of defendant's other convictions did not necessitate a legal determination like the one required to determine whether defendant's second-degree murder conviction should be classified as a Class B1 or a Class B2 felony. As a result, the fact that the parties to this case were entitled to stipulate to defendant's other convictions sheds little light on their ability to stipulate to the manner in which defendant's second-degree murder should be treated for prior record level calculation purposes given that, in the aftermath of the 2012 amendments to N.C.G.S. § 14-17(b), the mere fact that the defendant has been convicted of second-degree murder, standing alone, does not answer the question of how many prior record points should be attributed to that conviction. Simply put, the parties' stipulation that defendant's second-degree murder conviction should be treated as a Class B1, rather than a Class B2, felony is simply not like other stipulations to the effect that a defendant has been convicted of a particular offense and should not be treated as such.
In reversing the Court of Appeals' decision, the Court essentially concludes that the trial court was entitled to accept the parties' stipulation to the number of prior record points that should be assigned to defendant's second-degree murder conviction on the theory that a defendant who stipulates to having been convicted of a particular offense also stipulates to the facts underlying that conviction. In other words, the Court evidently believes that a defendant who stipulates to the manner in which his or her prior second-degree murder conviction should be classified for prior record level calculation purposes effectively stipulates to the existence of facts sufficient to support a determination that his or her conviction should be classified as either a Class B1 or a Class B2 felony, making it a "factual stipulation" that "allowed the trial judge to properly classify the offense as B1." Aside from the fact that the Court has not cited any authority in support of this expansive definition of a "conviction" as that term in used in N.C.G.S. § 15A-1340.14 or explained why this approach is consistent with the manner in which that term **533 has been utilized in this Court's precedent, it is difficult for me to see what sort of stipulation would not qualify as a stipulation of fact under the Court's logic or how the Court's decision can be squared with this Court's holdings in cases like Fearing , 315 N.C. at 174, 337 S.E.2d at 55 (prohibiting a trial judge from accepting the parties' stipulation that a particular child was competent to testify as a witness); Phifer , 297 N.C. at 226, 254 S.E.2d at 591 (stating that the trial court was not bound by the State's stipulation that investigating officers lacked probable cause to believe that contraband was located in a particular automobile); Quick , 287 N.C. at 56-57, 213 S.E.2d at 569 (stating that the trial court was not bound by any stipulation that defendant was a "slayer" for purposes of N.C.G.S. § 31A-3(3) ); and In re Edmundson , 273 N.C. at 97, 159 S.E.2d at 513 (rejecting the parties' stipulation to the effect "[t]hat the agreed statement of facts stipulated herein are all of the facts necessary for the court to make its decision"). As a result, the logic upon which the Court's decision to reverse the Court of Appeals' decision in this case rests does not strike me as persuasive.
I am equally unpersuaded by the Court's reliance upon the decision of the Court of *339 Appeals in State v. Wingate , 213 N.C. App. 419, 713 S.E.2d 188 (2011), which upheld the parties' stipulation that defendant had been convicted for selling, as compared to delivering, cocaine. See N.C.G.S. § 90-95(b)(1) (2009) (providing that "any person who violates G.S. 90-95(a)(1) with respect to ... [a] controlled substance ... shall be punished as a Class H felon, except ... the sale of a controlled substance classified in Schedule I or II shall be punished as a Class G felony"); see also State v. Creason , 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985) (observing that "the sale of narcotics and the delivery of narcotics are separate offenses" (citing State v. Dietz , 289 N.C. 488, 223 S.E.2d 357 (1976) ).[3] Aside from the fact that it is not binding upon this Court, Wingate did nothing more than reiterate the longstanding principle that a defendant **534 can stipulate that he or she had been convicted of a particular offense at some point in the past. Thus, Wingate has no bearing upon the proper resolution of this case, which revolves around a determination of the identity of the theory under which defendant was convicted of second-degree murder rather than the identity of the crime that defendant was previously convicted of having committed.
In addition to concluding that the stipulation upon which the trial court based its prior record level determination was factual rather than legal in nature, the Court conducts an independent factual analysis based upon the information contained in this Court's decision overturning defendant's original first-degree murder conviction in order to determine that defendant's second-degree murder conviction should be classified as a Class B1, rather than a Class B2, felony for purposes of calculating defendant's prior record level and that defendant had ample justification for believing that his second-degree murder conviction reflected his guilt of a Class B1, rather than a Class B2, felony. According to the Court, "defendant pled guilty to second-degree murder based on the same facts" and "[t]hese relevant facts, of which defendant was intimately aware, indicate that defendant's conduct fell within the [B1] second-degree murder classification." Aside from my concern that this portion of the Court's analysis could be construed as appellate fact-finding, the record contains no indication that the information upon which the Court relies in making this determination was ever presented to the trial court, which acts as the fact-finder in structured sentencing proceedings.[4] As a result, I do not believe that the Court's independent evaluation of material that does not appear in the record that has been presented for our review in this case provides any basis for upholding the trial court's decision to treat defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony for the purpose of calculating defendant's prior record level.
Thus, the trial court's decision to classify defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony necessarily rested upon an acceptance of the parties' legal determination that various facts never presented for the trial court's consideration **535 by stipulation or otherwise sufficed to establish that defendant's conduct *340 was encompassed in N.C.G.S. § 14-17(b)(1), rather than N.C.G.S. § 14-17(b)(2), instead of upon an independent analysis of the factual information presented for the court's consideration at defendant's sentencing hearing in light of the applicable legal principles. For that reason, the trial court's determination that defendant's second-degree murder conviction should be assigned nine, rather than six, points for the purpose of calculating defendant's prior record level rests solely upon an acceptance of the parties' stipulation to a matter of law, an action which this Court has repeatedly held that trial judges lack the authority to take. As a result, I respectfully dissent from my colleagues' decision to reverse the Court of Appeals' decision and would, instead, affirm the Court of Appeals' decision to vacate defendant's guilty plea and remand this case for further proceedings in the trial court.
Justices HUDSON and BEASLEY join in this dissenting opinion.

According to well-established North Carolina law, "there are at least three kinds of malice," including "a positive concept of express hatred, ill-will or spite, sometimes called actual, express, or particular malice"; "when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; and "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." State v. Reynolds , 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (first citing State v. Benson , 183 N.C. 795, 799, 111 S.E. 869, 871 (1922), disapproved in part on other grounds by State v. Phillips , 264 N.C. 508, 516, 142 S.E.2d 337, 342 (1965) ; then citing State v. Wilkerson , 295 N.C. 559, 578, 247 S.E.2d 905, 916 (1978) ; and then quoting State v. Foust , 258 N.C. 453, 458, 128 S.E.2d 889, 893 (1963) (quoting Benson , 183 N.C. at 799, 111 S.E. at 871 ) ).

Although the Court treats a second-degree murder conviction as presumptively being a Class B1 felony, the fact that the State has the burden of proving that a particular prior conviction exists, N.C.G.S. § 15A-1340.14(f)(2017) (providing that "[t]he State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists"), compels the conclusion that any failure on the part of the State to establish that a defendant's second-degree murder conviction should be treated as a Class B1 felony requires that the relevant second-degree murder conviction be treated as a Class B2 felony for the purpose of calculating the defendant's prior record level.

Admittedly, this Court did state in State v. Moore , 327 N.C. 378, 382, 395 S.E.2d 124, 127 (1990), that, "by the statutory language at issue here the legislature has made it one criminal offense to 'sell or deliver' a controlled substance under N.C.G.S. § 90-95(a)(1)." On the other hand, after acknowledging the language from State v. Creason quoted in the text of this opinion, we stated that Creason , 313 N.C. at 129, 326 S.E.2d at 28, and State v. Dietz , 289 N.C. 488, 498, 223 S.E.2d 357, 364 (1976) (stating that "the two acts could have been charged as separate offenses" (emphasis added) ), did "not mandate the conclusion that a defendant may also be convicted for two offenses in such situations." Moore , 327 N.C. at 382, 395 S.E.2d at 127 (emphasis omitted). As a result, our cases addressing this issue, when harmonized with each other, indicate that, while the sale and delivery of a controlled substance are separate offenses, a defendant cannot be separately convicted of and sentenced for the sale and delivery of the same controlled substance consistent with the relevant legislative intent.

Admittedly, the prosecutor did state in the course of her sentencing argument that defendant had "killed a nine-year-old child, shot a nine-year-old child to death" and that defendant had entered a plea of "guilty to second-degree murder" after this Court reversed his first-degree murder conviction. However, the statement in question does not constitute evidence and defendant never took any action that can be construed as a stipulation to the accuracy of that statement.