IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1060

Filed 3 September 2024

Mecklenburg County, No. 20 JT 96

IN THE MATTER OF: R.H.

Appeal by Respondent-Mother from order entered 24 August 2023 by Judge J.

Rex Marvel in Mecklenburg County District Court. Heard in the Court of Appeals 28

May 2024.

> *Mecklenburg County Attorney's Office, by Senior Associate Attorney Kristina A. Graham, for petitioner-appellee Mecklenburg County Youth and Family Services.*
>
> *Guardian ad Litem Program Staff Counsel Michelle FormyDuval Lynch for petitioner-appellee Guardian ad Litem*
>
> *Robinson & Lawing, LLP, by Christopher M. Watford, for respondent-appellant mother.*

STADING, Judge.

Respondent-mother (Mother) appeals from the trial court's order terminating

her parental rights to her minor child R.H. (Rory[1]). For the reasons below, we affirm.

## I. Background

This case began on 25 February 2020, when Mecklenburg County Youth and

Family Services (YFS) filed a petition alleging that newborn Rory was neglected and

---

[1] A pseudonym is used to protect the minor child's identity.

dependent. YFS claimed that it had been involved with the family since 2018, when four of Mother's children were taken into YFS custody and subsequently adjudicated neglected and dependent due to domestic violence between their parents, unstable housing, and inappropriate care and supervision. YFS alleged that Mother had not made progress in alleviating the conditions that led to the children's removal, and as a result, YFS petitioned to terminate Mother's parental rights to Rory's three half-siblings.

The fourth child taken into YFS custody in 2018 was the only previous child of Mother and respondent-father (Father). According to YFS, that child passed away in early 2019, and then Father did not engage in domestic violence services. Yet Mother and Father—who was married to another woman—continued to engage in a relationship rife with incidents of domestic violence. YFS alleged that, during the summer of 2019, there were at least four incidents of domestic violence, which led to Father being arrested and charged with assault on a female, assault by strangulation, assault with a deadly weapon, and communicating threats.

Based on the allegations in the petition, YFS obtained nonsecure custody of Rory. YFS subsequently filed an amended neglect and dependency petition, which added an allegation that there was another domestic violence incident on 23 December 2023, during which Father grabbed pregnant Mother by the neck and punched her in the stomach. Father was charged with assault on a female and assault on an unborn child (Rory) because of this incident.

The petition, as amended, was heard on 7 July 2020. On 12 August 2020, the trial court entered an order adjudicating Rory as a neglected and dependent juvenile. The trial court ordered a safety plan to be put into place to work towards unsupervised visitation between Mother and Rory. Father was not to be informed of the location and times of any visitation, and Mother was ordered to report any domestic violence incidents to YFS. Rory remained in YFS custody.

The trial court entered a permanency planning order on 22 July 2021, establishing a primary plan of reunification with Mother and a secondary plan of adoption. In this order, the trial court found that Mother had made significant progress in the case involving her other children and was engaging in services and cooperating with YFS and the guardian ad litem (GAL) in Rory's case. Mother was awarded a mix of supervised and unsupervised visitation, and YFS was permitted to expand unsupervised visitation in its discretion.

In a July 2022 permanency planning order, the trial court changed Rory's primary permanent plan to adoption with a secondary plan of reunification. In this order, the trial court found that Mother had completed services and was cooperating with YFS and the GAL but that she was also acting inconsistently with Rory's health and safety by failing to consistently attend visitation, which had been changed to weekly supervised visitation in a prior permanency planning order. The trial court also found that there were incidents of domestic violence at Mother's home in 2022.

Noting that Rory had been in foster care for twenty-seven months, the trial court ordered the GAL to file a termination petition.

The GAL petitioned to terminate Mother's and Father's parental rights on 21 November 2022. As for Mother, the GAL alleged four grounds for termination: neglect, willfully leaving Rory in foster care for more than twelve months without making reasonable progress to correct the conditions that led to his removal, willful failure to pay a reasonable portion of Rory's cost of care, and that Mother's parental rights to another child had been involuntarily terminated and Mother lacks the ability or willingness to establish a safe home. *See* N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (9) (2023).

The termination petition was heard over four days in May and June 2023. Several witnesses testified about Mother's ongoing relationship with Father and the repeated incidents of domestic violence that occurred as part of that relationship. During her testimony, Mother admitted that she and Rory met with Father during an overnight trip to Myrtle Beach and at the Carolina Place Mall; these meetings occurred less than two weeks before the termination hearing began. Mother acknowledged that these meetings violated her case plan but claimed they were not preplanned or intentional.

On 24 August 2023, the trial court entered an order terminating Mother's

parental rights.[2]  The trial court concluded that all four termination grounds alleged by the GAL existed and that termination of Mother's rights was in Rory's best interest.  Mother appeals.

## II.     Jurisdiction

This Court has jurisdiction to hear this appeal under N.C. Gen. Stat. §§ 7B-27(b) and 7B-1001(a)(7) (2023).

## III.     Analysis

On appeal, Mother challenges the four grounds for termination found by the trial court.  This Court reviews the trial court's adjudication of termination grounds to determine "whether the trial court's conclusions of law are supported by adequate findings and whether those findings, in turn, are supported by clear, cogent, and convincing evidence."  *In re A.J.L.H.*, 384 N.C. 45, 53, 884 S.E.2d 687, 693 (2023) (citing *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019)).  Any unchallenged findings are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019).  The trial court's conclusions of law are reviewed de novo.  *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

We first consider whether the trial court properly found that Mother's parental rights were subject to termination based on neglect.  A parent's rights may be terminated under this ground if that parent neglects their child such that the child

---

[2] The trial court's order also terminated Father's parental rights.  However, Father did not appeal.

meets the statutory definition of a "neglected juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2023). A neglected juvenile includes a juvenile whose parent "[d]oes not provide proper care, supervision, or discipline[,]"or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15)(a), (e) (2023).

When a child has been out of their parent's custody for a significant time, "neglect may be established by a showing that the child was neglected on a previous occasion and the presence of the likelihood of future neglect by the parent if the child were to be returned to the parent's care." *In re J.D.O.*, 381 N.C. 799, 810, 874 S.E.2d 507, 517 (2022) (citation omitted). "When determining whether such future neglect is likely, the [trial] court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re R.L.D.*, 375 N.C. 838, 841, 851 S.E.2d 17, 20 (2020) (citation omitted). "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).

Here, the trial court found and concluded that Mother had previously neglected Rory and that there was a probability of repetition of neglect in the future if Rory was returned to Mother's care. Mother does not dispute that Rory was previously

adjudicated neglected. Still, she challenges many of the trial court's findings of fact[3] and its conclusion that there is a likelihood of repetition of neglect. "[W]e review only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58-59.

Mother first contends that several portions of the trial court's finding of fact 10 are merely "recitations of witness testimony" and thus do not constitute proper findings:

> j. There was testimony the children suffered trauma from domestic violence and [Mother] suffered trauma and sought counseling to address domestic violence.
>
> . . . .
>
> m. [A law enforcement officer] testified about being called to residence regarding [Father] allegedly breaking and entering and stealing gaming equipment.
>
> n. The Officer testified regarding responding to a domestic violence disturbance during which [Father] allegedly threw a tool at [Mother].
>
> o. [Another law enforcement officer] testified that on November 1, 2022 he determined that residence of [Mother] was also the residence of [Father] . . . .

---

[3] We note that YFS, although an appellee in this case, joins Mother in challenging many of the findings of fact made by the trial court in its termination order. Nonetheless, YFS maintains that terminating Mother's parental rights is ultimately proper. To the extent YFS' arguments could be construed as a concession of error, we observe that such concessions do not bind this Court. *See State v. Phifer*, 297 N.C. 216, 226, 254 S.E.2d 586, 591 (1979) ("This Court, however, is not bound by the State's concession. The general rule is that stipulations as to the law are of no validity." (citations omitted)).

. . . .

> v. [Mother] testified that during the [three] extended unsupervised overnight visits she was given that started May 10, 2023, [] she took her children, including [Rory] to see [Father]. [Mother] testified she took [Rory] out of state to Myrtle Beach with [Father] the weekend of May 13, 2023. [Mother] testified she took [Rory] to a restaurant in South Carolina and a Walmart in South Carolina with [Father]. [Mother] testified that during the next extended weekend visit on May 19th, 2023, she took [Rory] to Carolina Place Mall in North Carolina with [Father].

. . . .

> cc. [A social worker] testified that [Mother] makes risky decisions that puts her children at risk and there is no evidence that [Mother] will leave [Father].

Our Supreme Court has explained that "[t]here is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings, resolving any material disputes[.]" *In re A.E.*, 379 N.C. 177, 185, 864 S.E.2d 487, 495 (2021) (citations omitted). We agree with Mother that in paragraphs j., m., n., o., and cc., the trial court recited testimony without any indication that it evaluated the credibility of the relevant witness. Accordingly, we disregard those findings. *See id.*

With respect to paragraph v., the trial court made additional findings that reflected that it did not find Mother's testimony regarding the circumstances of her trip to Myrtle Beach and her meeting with Father at Carolina Place Mall to be credible. Mother challenges these findings as not supported by clear, cogent, and convincing evidence:

y. [Father] has not made any progress on his case plan and has not visited [Rory] until theses [sic] visits where [Mother] brought [Rory] to him when he is alleged to have blackmailed [Mother].

. . . .

bb. [Mother] and [Father] are still in a relationship, [Father] has never worked a case plan and [Father] still excerpts [sic] power and control over [Mother].

. . . .

hh. Despite [Mother] claiming she and [Father] were no longer in a romantic relationship there were domestic violence incidents in May 2021, November 2022 and May 2023[.] [Mother] violated this Court's order and the YFS safety plan when she took [Rory] to [Father] out of state and against the orders of the Court.

ii. The facts show the amount of control [Father] has over [Mother]. [Mother's] inappropriate decision making and willingness to hide the truth from the Court, YFS and GAL to conceal her continued relationship with [Father] even though it jeopardizes her case progress as well as the health and safety of any children in her care.

jj. It is clear to the Court from the evidence that [Father] has perpetrated acts of domestic violence against [Mother], has not changed his behaviors, not engaged in his case plan, still contacts [Mother] and went on an unsanctioned vacation with her and [Rory] in May 2023.

Mother argues that there was insufficient evidence for the trial court to infer that she and Father were in an ongoing relationship or that she intentionally met with Father in Myrtle Beach or at the Carolina Place Mall, and that to the extent these findings imply or state otherwise, they are erroneous.

As for the meetings with Father in Myrtle Beach and at the Carolina Place

Mall, Mother acknowledges that the meetings occurred. However, she argues that her testimony that the meetings were unplanned was uncontroverted, such that the trial court's findings that suggest the meetings were intentional are unsupported.

"In the context of termination of parental rights proceedings, the proper inquiry is often fact-dependent and the trial court, as a fact-finding court, is in the best position to determine the credibility of the witnesses before it and make findings of fact." *In re S.R.*, 384 N.C. 516, 517, 886 S.E.2d 166, 169 (2023) (citation omitted). Thus, the trial court "determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, the trial court alone determines which inferences to draw and which to reject." *In re M.M.*, 272 N.C. App. 55, 69, 845 S.E.2d 888, 898 (2020) (citation and internal quotation marks omitted).

In this case, the trial court determined that Mother's claims that her recent meetings with Father were unplanned and unintentional were not credible. In addition to making a finding noting that "[t]here is a long history of [Mother] hiding information of domestic violence and the court has in prior orders questioned the mom's veracity," the trial court also expressed concerns about Mother's truthfulness during the termination hearing. Contrary to Mother's argument, the trial court was not required to uncritically accept her explanation for her multiple meetings with Father, including at a location hours away and out of state, shortly before the termination hearing. Given that Mother admitted that the meetings had occurred,

the trial court could infer that the meetings were intentional and planned based on Mother's behavior throughout the history of this case. Accordingly, we reject Mother's challenges to the trial court's findings about these meetings.

As to the existence of her ongoing relationship with Father, Mother does not challenge the trial court's finding that on 22 December 2021, Mother gave birth to another child she had conceived with him. Moreover, during the termination hearing, multiple witnesses testified regarding Mother's ongoing relationship with Father throughout the history of this case. A police officer who responded to a domestic violence call at Mother's home on 1 November 2022 stated that he believed Father was living in the home because Father "showed us a lot of his belongings" there. In addition, the GAL supervisor testified to having seen Father's car at Mother's residence between May 2022 and November 2022. Finally, as noted previously, Mother took Rory on an out-of-state trip to meet with Father and then met with Father again at the Carolina Place Mall just days before the termination hearing began. Based on these facts and findings, the trial court could reasonably infer that Mother and Father remained in a relationship at the time of the termination hearing. *See In re M.M.*, 272 N.C. App. at 69, 845 S.E.2d at 898. Mother's challenges to these findings are therefore overruled.

The final two paragraphs of finding of fact 10 reflect the trial court's ultimate determination that there would be a repetition of neglect if Rory was returned to Mother's care:

kk. [Mother] has engaged in all services offered. The question is whether her behavior changed. There is clear, cogent, and convincing evidence that [Mother's] behaviors have not changed based on her ongoing relationship with [Father]. [Father] continues to use power and control over [Mother] as evidenced by [Mother's] own testimony that [Father] is blackmailing her, yet [Mother] chose to have another child with [Father]. If this Court gave custody of [Rory] to [Mother] based on [Mother's] ongoing relationship with [Father], [Rory] will continue to be exposed to domestic violence. Severing this relation is important to [Rory's] safety and [Rory] is neglected in that there exists a reasonable probability the neglect will continue despite [Mother's] engaging in services, counseling, and signing safety plans as she continues to be in a relationship with her abuser even though it jeopardizes her relationship with her children.

ll. The ground of neglect continues to exist and there is a reasonable probability that it will continue in the future. [Mother] has gone to parenting classes, has completed domestic violence education, is in therapy that is ongoing, and has completed certain other aspects of her case plan. However, the aspect about receiving domestic violence counseling and then incorporating the counseling into her decision-making has not been established. This is the main reason the child is in custody.

These findings reflect that the trial court gave due consideration to Mother's progress throughout the case, including completing many of her case plan goals. Thus, the trial court properly "consider[ed] evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re R.L.D.*, 375 N.C. at 841, 851 S.E.2d at 20. Even so, the trial court weighed this progress against Mother's inability to end her relationship with Father. As shown by the trial court's findings, Rory came into YFS custody just days after his birth because

- 12 -

Father had violently assaulted Mother by punching her in the stomach while she was pregnant with Rory. During Rory's time in YFS' care, there were repeated domestic violence incidents between Mother and Father, but Mother refused to end the volatile relationship that was the primary basis for Rory's previous adjudication as a neglected juvenile. Despite knowing it violated her case plan, Mother was still bringing Rory to meet with Father regularly in the weeks leading up to the termination hearing. Based on Mother's failure to address her issues with domestic violence, the trial court properly determined there was a probability of repetition of neglect in the future if Rory was returned to Mother's care. *See In re M.A.*, 374 N.C. 865, 870, 844 S.E.2d 916, 921 (2020) ("A careful review of the record persuades us that the trial court's findings concerning respondent-father's failure to adequately address the issue of domestic violence have ample evidentiary support and are, standing alone, sufficient to support a determination that there was a likelihood of future neglect in the event that the children were returned to respondent-father's care."); *In re M.C.*, 374 N.C. 882, 889, 844 S.E.2d 564, 569 (2020) ("[R]espondent's refusal to acknowledge the effect of domestic violence on the children and her inability to sever her relationship with Walter, even during or immediately following his periods of incarceration, supports the trial court's determination that the neglect of the children would likely be repeated if they were returned to respondent's care.").

Accordingly, the trial court properly determined that Mother's parental rights were subject to termination based on neglect under N.C. Gen. Stat. § 7B-1111(a)(1)

in that Rory was previously neglected and there was a likelihood of repetition of neglect if Rory was returned to Mother's care. Since we have concluded the neglect ground is adequately supported, we need not address Mother's remaining arguments regarding the other grounds for termination found by the trial court. *See In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019) ("[A] finding of only one ground is necessary to support a termination of parental rights[.]").

## IV.   Conclusion

There were sufficient findings of fact, supported by clear, cogent, and convincing evidence, to support the trial court's conclusion that Mother's parental rights could be terminated based on neglect. Mother does not challenge the trial court's determination that termination was in Rory's best interest. Accordingly, we affirm the termination order.

AFFIRMED.

Judges ZACHARY and COLLINS concur.