STATE OF NORTH CAROLINA v. PHILLIP DIETZ

No. 35

(Filed 6 April 1976)

1. **Constitutional Law § 30— speedy trial — pre-indictment delay — necessity for hearing**

    The trial court did not err in denying defendant's motion to dismiss the prosecution because of a four and one-half month pre-indictment delay where the delay resulted from the need to protect from exposure the existence of an ongoing undercover investigation and defendant failed to show that any evidence or testimony which would have been helpful to his defense was lost as the result of the delay; furthermore, the trial court was under no obligation to hold an evidentiary hearing to determine issues of intentional delay and actual prejudice where defendant's motion to dismiss contained only conjectural and conclusory allegations of malicious intent on the part of law enforcement officials and of impaired memory and lost witnesses.

2. **Narcotics § 3— sale of marijuana — attempted purchases by others — harmless error**

    In a prosecution for the felonious sale and delivery of marijuana, any error in allowing the district attorney to ask defendant if anyone else besides the State's witness had ever approached him about buying marijuana was not so prejudicial as to require a new trial.

3. **Narcotics § 1— sale of marijuana — necessity for findings by Drug Authority**

    In a prosecution for the felonious sale and delivery of marijuana, it was not necessary for the State to show that the North Carolina Drug Authority had made a finding that marijuana is in fact a controlled substance since marijuana has been listed as a controlled substance by the General Assembly in G.S. 90-94, and the findings referred to in that statute apply only to drugs the Authority may wish to add, delete or reschedule.

4. **Indictment and Warrant § 9— two acts constituting separate offenses — charge of one offense**

    Defendant was not prejudiced by the fact one count of an indictment charged him with one offense of sale *and* delivery of marijuana when both acts could have been charged as separate offenses.

5. **Narcotics § 4.5— delivery of marijuana — instructions**

    In a prosecution for the felonious sale and delivery of marijuana, the trial judge sufficiently charged on delivery by placing the burden on the State to prove beyond a reasonable doubt that defendant sold and "transferred" more than five grams of marijuana since transfer, under the narcotics statute, is delivery.

6. **Criminal Law § 118— instructions on contentions**

    A judge is not required to state the contentions of the parties.

**7. Criminal Law § 113— statement of evidence — minor discrepancies**

The court is not required to give a verbatim recital of the evidence but only a summation sufficiently comprehensive to present every substantial and essential feature of the case, and minor discrepancies must be called to the attention of the court in time to afford opportunity for correction or they are deemed to be waived and will not be considered on appeal.

ON petition by the State for discretionary review of the decision of the Court of Appeals, reported in 27 N.C. App. 296, 219 S.E. 2d 256 (1975), which ordered a new trial for errors found in the trial before *Thornburg, J.,* at the 2 December 1974 Special Criminal Session of JACKSON Superior Court.

Defendant was charged in a two-count bill of indictment with (1) the felonious sale and delivery to Dan Crumley on 17 May 1974 of more than five grams of the controlled substance marijuana and (2) the felonious possession on 17 May 1974 of more than five grams of marijuana with intent to sell and deliver. Defendant entered pleas of not guilty to both charges.

The State's evidence tended to show that on 17 May 1974, Danny Eugene Crumley, a student at Western Carolina University, went to defendant's room in Madison Dormitory where defendant sold him "$20 worth of marijuana." On 23 ·May 1974, Crumley turned this green vegetable material over to State Bureau of Investigation Agent James T. Maxey. Analysis by a State Bureau of Investigation chemist showed the material to be 22.19 grams of marijuana.

Defendant testified that he was a student at Western Carolina University during the spring of 1974 and knew Dan Crumley. Defendant admitted that Dan Crumley had offered to purchase marijuana from him but denied that he ever sold any marijuana to Crumley.

The jury found defendant guilty of the charge contained in the first count of the indictment but not guilty of the charge contained in the second count. Defendant was sentenced to five years' imprisonment; however, that portion of the sentence accruing after 3 December 1976 was suspended for five years and defendant was placed on probation on conditions specified in the judgment. From this judgment defendant appealed. The Court of Appeals reversed the conviction and granted defendant a new trial.

We allowed the State's petition for discretionary review pursuant to G.S. 7A-31 on 6 January 1976.

Other facts necessary to decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorney Daniel C. Oakley for the State, appellant.*

*Morris, Golding, Blue and Phillips by William C. Morris, Jr. for defendant appellee.*

MOORE, Justice.

We allowed the State's petition for discretionary review to consider the decision of the Court of Appeals in which that court (1) reversed the trial court and ordered a new trial because of the pre-indictment delay and (2) held that the trial court erroneously overruled defendant's objection to a question asked by the district attorney.

[1] The State first contends that the trial court did not err in denying defendant's motion to dismiss the prosecution because of a four and one-half month pre-indictment delay, and that the Court of Appeals erroneously decided that the trial court should have held a sufficient hearing to determine the reason for the delay and the resulting prejudice, if any, to defendant. The State urges that there was sufficient evidence before the trial judge in the form of defendant's motion and affidavit to enable him to consider and rule on the motion without conducting an evidentiary hearing.

In *United States v. Marion,* 404 U.S. 307, 30 L.Ed. 2d 468, 92 S.Ct. 455 (1971), the Supreme Court refused to extend the Sixth Amendment's guarantee of a speedy trial to those persons who had not yet been "accused" of a crime, either by arrest or indictment. However, persons who allege pre-indictment delay are protected under the Fifth Amendment " . . . if it were shown at trial that the pre-indictment delay . . . caused *substantial* prejudice to appellees' rights to a fair trial and that the delay was an *intentional device* to gain tactical advantage over the accused. . . . " (Emphasis added.) 404 U.S. at 324, 30 L.Ed. 2d at 481, 92 S.Ct. at 465. The delay in that case was thirty-eight months from the date of the alleged offenses until indictment. The Court refused to dismiss the prosecution because of that delay.

This Court also considered pre-indictment delay in *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969). There, we held the prosecution must be dismissed due to an intentional four-year delay by the State in securing an indictment against defendant. Justice Sharp (now Chief Justice), speaking for the Court, said:

> "We here hold that when there has been an atypical delay in issuing a warrant or in securing an indictment and the defendant shows (1) that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State; and (2) that the length of the delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed."

Numerous federal decisions have expanded on the Fifth Amendment standards applicable to the pre-indictment situation. These decisions have recognized the uncertainty after *Marion* of whether a successful claim under the Fifth Amendment must establish both actual prejudice to the defendant *and* intentional delay on the part of the government. Most are in accord, however, that at least in the absence of intentional governmental delay for the purpose of harassing or gaining advantage over defendant, the burden is on defendant to affirmatively demonstrate actual and substantial prejudice. *United States v. Jackson,* 504 F. 2d 337 (8th Cir. 1974); *United States v. Joyce,* 499 F. 2d 9 (7th Cir. 1974), *cert. den.,* 419 U.S. 1031, 42 L.Ed. 2d 306, 95 S.Ct. 512 (1974); *United States v. Giacalone,* 477 F. 2d 1273 (6th Cir. 1973); *United States v. White,* 470 F. 2d 170 (7th Cir. 1972). Most courts appear to engage in a balancing process, such as that mandated in *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972), a Sixth Amendment speedy trial case, of weighing the reasonableness of the delay against the prejudice to the accused. *United States v. Jackson, supra; United States v. Norton,* 504 F. 2d 342 (8th Cir. 1974); *Robinson v. United States,* 459 F. 2d 847 (D.C. Cir. 1972).

In the case at bar, the record reveals that Dan Crumley was working as an undercover agent, buying drugs for the SBI. At different times, Crumley received his money to purchase the drugs, totaling approximately $200, from SBI Agent James T. Maxey and reported all his buys to Agent Maxey. This particular undercover investigation took place over a five or six-month

period, from January or February 1974 until around August 1974. During this time, Crumley made fourteen or sixteen purchases of drugs, only one of which was from defendant. Had the drugs obtained by Crumley been used as the basis for an arrest of defendant on the date of purchase, his identity as an undercover agent would have been exposed and his further effectiveness destroyed. Moreover, since Crumley remained at Western Carolina until the end of that term, he could have been in danger had his undercover activities been known. In fact, Agent Maxey, probably because of the possibility of that danger, arranged with the officials of Western Carolina and Elon College to have Crumley transfer to Elon at the end of the 1974 spring term.

On the issue of whether the four and one-half month delay was intentionally engineered by the State to disadvantage him, defendant, in the affidavit filed with his motion to dismiss, stated:

"Defendant is advised, informed and believes, and therefore alleges, that the State delayed the indictment, declined to issue a warrant against him, and delayed giving him any information about the nature and details and the names of witnesses against him, so that he would be substantially prejudiced in the defense of this prosecution because of his inability to remember places, dates, times, his own whereabouts, and for the further reason that the memory of any witnesses that he might have been able to obtain when he finally learned of the details of the charges against him would also be dimmed and lost to the defendant."

The legitimate need to protect the existence of an ongoing undercover investigation from exposure has been frequently recognized by the federal courts as a reasonable justification for delay in bringing an indictment. *United States v. Cowsen,* 18 Crim. Law Rptr. (7th Cir. 1976); *United States v. Jackson, supra; United States v. Emory,* 468 F. 2d 1017 (8th Cir. 1972). Defendant's allegations of malicious intent on the part of the law enforcement officials are unsupported by defendant's affidavit, and, defense counsel, on oral argument before us, stated that this affidavit was all the evidence he had.

State v. Dietz

Concerning his claim of prejudice due to the delay, defendant stated:

"That this defendant first became aware of the date on which the alleged offense is supposed to have occurred in November, 1974, and at that time learned for the first time that he is alleged to have sold marijuana to Dan Crumley on 17 May 1974 and that by the time such information was made available to him, the defendant was unable to remember precisely where he was on 17 May 1974, the names of persons that he saw on that date, the places he visited, the classes he attended, or any other information which might be helpful to him in advising his attorney and structuring a defense to this prosecution."

Again, defendant produced no evidence to support these allegations. Mere claims of "faded memory" have often been held not to constitute "actual and substantial" prejudice required by *Marion*. *United States v. McGough*, 510 F. 2d 598 (5th Cir. 1975); *United States v. Giacalone, supra; United States v. Atkins*, 487 F. 2d 257 (8th Cir. 1973). Rather, the courts hold that defendant must show that lost evidence or testimony would have been helpful to his defense, that the evidence would have been significant, and that the evidence or testimony was lost as the result of the pre-indictment delay. *United States v. Parish*, 468 F. 2d 1129 (D.C. Cir. 1972), *cert. den.*, 410 U.S. 957, 35 L.Ed. 2d 690, 93 S.Ct. 1430 (1973). Hardly a criminal case exists where the defendant could not make these general averments of impaired memory and lost witnesses. *United States v. Marion, supra.*

As stated by the Court in *United States v. Cowsen, supra:*

" . . . A claim of faded memory, the veracity of which can rarely be satisfactorily tested, can be plausibly asserted in almost any criminal case in which the defendant is not charged within a few weeks, at most, after the crime. The possibility of likelihood of faded memory has not, however, in itself, been viewed as prejudice that requires dismissal of an indictment, despite delays of much longer than the four and one-half months shown here. . . . "

Defendant relies on *Ross v. United States*, 349 F. 2d 210 (D.C. Cir. 1965), one of the few cases where prosecutions have been dismissed due to pre-indictment delay. There, the Court reversed a narcotics conviction involving a seven-month pre-

indictment delay where the court found "(1) a purposeful delay of seven months between offense and arrest, (2) a plausible claim of inability to recall or reconstruct the events of the day of the offense, and (3) a trial in which the case against appellant consists of the recollection of one witness refreshed by a notebook." Here, however, we do not have the seven-month unnecessary delay between offense and arrest that the court found in *Ross*. Defendant has not shown here, as in *Ross*, that he has been precluded from offering the testimony of a specific alibi witness because of the witness's uncertainty as to the events. Finally, here we do not have a suspect identification by the undercover agent. On the contrary, defendant and Crumley knew each other prior to the purchase of the marijuana on 17 May 1974. *Ross* has been called a "paradigm case" in its own circuit, *Robinson v. United States, supra,* and is of no aid to this defendant.

Defendant strenuously urges upon this Court his contention, upheld by the Court of Appeals, that the trial court erred in failing to hold an evidentiary hearing into these issues of intentional delay on the part of the State and actual prejudice to defendant. We disagree with the Court of Appeals and hold that the trial court did not abuse its discretion in failing to hold such hearing. First, it does not appear in the record that defendant ever requested a hearing either before or after his motion to dismiss had been denied. Second, we agree with the reasoning of the Court in *United States v. Pritchard,* 458 F. 2d 1036 (7th Cir. 1972), *cert. den.,* 407 U.S. 911, 32 L.Ed. 2d 685, 92 S.Ct. 2434 (1972):

" . . . In the instant case the defendant's assertion of prejudice is a wholly conclusory allegation. No specific actual prejudice is factually alleged. The rationale of *Marion* is equally applicable here. Mere 'delay' does not equate with 'actual prejudice'. And, defendant alleged nothing in his motion which entitled him to an evidentiary hearing on an issue of actual prejudice alleged to have resulted from the delay. His motion speaks only of a potential prejudice predicated on the pre-indictment delay itself. Moreover, no actual prejudice was shown at the ensuing trial. [Citation omitted.]" *Accord, United States v. White, supra.*

In *State v. Frank,* 284 N.C. 137, 200 S.E. 2d 169 (1973), in holding that an eight to ten-month Sixth Amendment delay was

State v. Dietz

not unreasonable, we reiterated that the right to a speedy trial is an integral part of the fundamental law of this State, but the burden is on an accused who asserts denial of his right to a speedy trial to show the delay was due to the neglect or willfulness of the prosecution. *See State v. Harrell,* 281 N.C. 111, 187 S.E. 2d 789 (1972) ; *State v. Johnson, supra; State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965). No such showing has been made in this case. Neither has there been a showing that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State. *State v. Johnson, supra.*

[1] We therefore hold that under the facts of this case, defendant has not demonstrated *either* intentional delay on the part of the State in order to impair defendant's ability to defend himself *or* "actual and substantial" prejudice from the pre-indictment delay. We further hold that given the conjectural and conclusory nature of the allegations in defendant's affidavit and motion to dismiss, the trial court was under no obligation to hold an evidentiary hearing in this matter, and that the Court of Appeals erred in ordering a new trial for this reason.

[2] The Court of Appeals also held that the trial court erred in overruling defendant's objection to the following question by the district attorney:

"Q. Has anyone else ever approached you about buying marijuana?

OBJECTION FOR DEFENDANT.

OVERRULED.

A. Yes, sir, they have."

Considering, *arguendo,* that the question technically was incompetent, we do not see how it was so prejudicial as to require a new trial. Immediately prior to the asking of this question, defendant had testified:

" . . . On the occasions when Dan Crumley asked me to sell him marijuana, I simply refused him. I did not have any.

" . . . I did say that two times this man asked me to buy marijuana. I did say that I refused him. I simply told

him that I refused to sell him any. I did not have any so I just told him no. I deny seeing him on May 17."

Crumley had also previously testified without objection:

" . . . I told him [defendant] I wanted him to sell me some marijuana. I had asked him this before—as to how many times I had asked him—twice—he said he didn't have any."

The testimony of Crumley, corroborated by Maxey, was sufficient to support the charge of the State that defendant did sell and deliver marijuana to Crumley. As Justice Bobbitt (later Chief Justice) said in *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969), quoting with approval from 3 Strong, N. C. Index 2d, Criminal Law § 169, p. 135:

" 'Where there is abundant evidence to support the main contentions of the state, the admission of evidence, even though technically incompetent, will not be held prejudicial when defendant does not affirmatively make it appear that he was prejudiced thereby or that the admission of the evidence could have affected the result.' "

Other decisions affirming and applying this rule include the following: *State v. Temple,* 269 N.C. 57, 66, 152 S.E. 2d 206, 212 (1967) ; *Gasque v. State,* 271 N.C. 323, 340, 156 S.E. 2d 740, 752 (1967), *cert. den.,* 390 U.S. 1030, 20 L.Ed. 2d 288, 88 S.Ct. 1423 (1968). " ' . . . Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless. [Citation omitted.]' . . . " *State v. Hudson,* 281 N.C. 100, 106-07, 187 S.E. 2d 756, 761 (1972). *Accord, State v. McCotter,* 288 N.C. 227, 217 S.E. 2d 525 (1975).

The Court of Appeals erred in awarding a new trial on the ground that the trial court erroneously overruled defendant's objection to this question.

The Court of Appeals ordered a new trial upon the two grounds brought forward by the State in its petition for discretionary review, and, consequently, considered only those two assignments of error. On appeals taken before 1 July 1975, ordinarily our review was restricted to the rulings of the Court of Appeals which were challenged in the petition for *certiorari* or on direct appeal and brought forward in appellant's brief filed in this Court. In criminal cases in which the State ap-

pealed or petitioned for *certiorari,* we could elect to consider defendant's remaining assignments of error. *State v. McCotter, supra; State v. Muse,* 280 N.C. 31, 185 S.E. 2d 214 (1971), *cert. den.,* 406 U.S. 974, 32 L.Ed. 2d 674, 92 S.Ct. 2409 (1972). Under Rule 16(a) of the Rules of Appellate Procedure, effective for appeals taken on or after 1 July 1975, "[a] party who was an appellant in the Court of Appeals, and is either an appellant or an appellee in the Supreme Court, may present in his brief any question which he properly presented for review to the Court of Appeals, and is not limited to those actually determined by the Court of Appeals nor to those questions upon whose existence the appeal of right or the discretionary review is based. . . . " Section (b) of that Rule defines the terms *appellant* and *appellee,* when applied to discretionary review, as follows: "(1) With respect to Supreme Court review of a determination of the Court of Appeals upon petition of a party, *appellant* means the petitioner, *appellee* means the respondent."

Both the State and defendant, in their new briefs filed in this Court, restated questions presented in the Court of Appeals, but not decided by that court, and incorporated by reference arguments contained in the briefs filed in the Court of Appeals, in accordance with Rule 28(d). Hence, we consider the other questions presented by defendant in the Court of Appeals but not passed upon by that court.

[3] Defendant assigns as error the failure of the trial court to grant defendant's motion as of nonsuit at the close of the State's evidence and at the close of all the evidence. Defendant argues, in support of his motion, that the State failed to show that marijuana is a controlled substance in that no evidence was offered that the North Carolina Drug Authority had ever made a finding that marijuana was in fact a controlled substance.

A "controlled substance" is defined in G.S. 90-87(5) as "a drug, substance, or immediate precursor included in Schedules I through VI of this Article." G.S. 90-94 lists as Schedule VI substances: marijuana and tetrahydrocannabinols. Prior to this listing, is the following sentence upon which defendant relies:

> " . . . In determining that such substance comes within this schedule, the North Carolina Drug Authority shall find: no currently accepted medical use in the United States, or a relatively low potential for abuse in terms of risk to public health and potential to produce psychic or

> physiological dependence liability based upon present medical knowledge, or a need for further and continuing study to develop scientific evidence of its pharmacological effects."

Defendant contends the State must show that the North Carolina Drug Authority has made these findings as to marijuana, and that the State has failed so to do. Defendant's contention is patently without merit. G.S. 90-88 defines the powers of the Drug Authority, and sets out the procedures that must be followed before the Authority may "add, delete, or reschedule substances within Schedules I through VI of this Article." This section makes it clear that the sentence relied on by defendant, which is found before each schedule of controlled substances, I-VI, applies only to drugs the Authority may wish to add, delete, or reschedule. Marijuana is clearly a controlled substance in North Carolina and was listed as such by the General Assembly in G.S. 90-94. This assignment of error is overruled.

[4]   The first count in the bill of indictment charges that defendant did "sell and deliver to Dan Crumley more than five grams of the controlled substance marijuana." G.S. 90-95 (a) (1) makes it unlawful to manufacture, sell or deliver, or possess with intent to sell or deliver a controlled substance. Defendant contends that the first count in the bill of indictment charges two separate offenses, sale *and* delivery of marijuana, and that the State thereby assumed the burden of showing both a sale and delivery in order to convict. Defendant further contends that under these circumstances, it was incumbent upon the trial judge to explain both sale and delivery to the jury and to declare and explain the law thereon. Defendant specifically contended that the trial judge failed to mention delivery in his charge. The first count in the bill of indictment charged two acts, sale and delivery, which were a part of a single transaction. Admittedly, the two acts could have been charged as separate offenses. The fact that the State elected to subject defendant to one criminal penalty on the first count does not prejudice defendant. *State v. O'Keefe*, 263 N.C. 53, 56, 138 S.E. 2d 767, 769 (1964), *cert. den.*, 380 U.S. 985, 14 L.Ed. 2d 277, 85 S.Ct. 1355 (1965). As stated in 4 Strong, N. C. Index 2d, Indictment and Warrant § 9, p. 350: "Two acts constituting essentially parts of a single transaction may be charged together as a single offense, and defendant is not entitled to complain that only one offense was charged even though each act would

have been ground for a separate charge." Defendant concedes that the State's evidence tends to show both sale and delivery but insists that the trial judge did not define delivery. G.S. 90-87 (7) defines delivery as the "actual constructive, or attempted transfer from one person to another of a controlled substance."

[5] In summarizing the State's evidence, the trial judge stated that Crumley went to defendant's room, asked for and received from defendant 22.19 grams of marijuana for which he gave defendant $20. He then charged the jury that to find defendant guilty the State must prove beyond a reasonable doubt that defendant intentionally sold Crumley more than five grams of marijuana. He further stated: "An agreement by which the defendant, Phillip Dietz, intentionally transferred to Danny Eugene Crumley the controlled substance marijuana in exchange for $20.00 in money actually paid to him by Danny Crumley would be a sale of marijuana." Thus, the trial court put the burden on the State to prove beyond a reasonable doubt that defendant sold and transferred more than five grams of marijuana. Transfer, under the statute, is delivery. A charge to a jury must be read and considered in its entirety. *Gregory v. Lynch,* 271 N.C. 198, 155 S.E. 2d 488 (1967); *McPherson v. Haire,* 262 N.C. 71, 136 S.E. 2d 224 (1964). When the charge here is so read, there is no reasonable cause to believe the jury was misled or misinformed. No prejudicial error to defendant is shown.

[6, 7] Defendant next contends that the trial judge erred in failing to equally stress the contentions of both parties and in expressing an opinion on the evidence. The evidence in this case was comparatively short, and a careful reading of the charge discloses that the trial judge ably presented the principal features of the evidence for both the State and the defendant. The time devoted to summarizing the evidence for both was almost equal. Actually, the judge appears to have exercised more care in stating the evidence for the defendant than in stating the evidence for the State. He did not state any contentions for either the State or defendant. A judge is not required to state the contentions of the parties. *State v. Thomas,* 284 N.C. 212, 200 S.E. 2d 3 (1973); *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968); *State v. King,* 256 N.C. 236, 123 S.E. 2d 486 (1962). The recapitulation of the evidence is in substantial accord with the testimony in the case. In reviewing

the evidence, the court is not required to give a verbatim recital of the evidence but only a summation sufficiently comprehensive to present every substantial and essential feature of the case. If there are minor discrepancies, they must be called to the attention of the court in time to afford opportunity for correction. Otherwise, they are deemed to be waived and will not be considered on appeal. *State v. Thomas, supra; State v. Tart,* 280 N.C. 172, 184 S.E. 2d 842 (1971); 7 Strong, N. C. Index 2d, Trial § 33. If defendant desired a more comprehensive statement of the evidence or a statement of defendant's contentions, he should have requested it. Nowhere in the charge did the court express any opinion or intimation of opinion contrary to G.S. 1-180. This assignment is without merit.

We have considered defendant's other assignments of error and find them to be without merit. A careful review of the entire record discloses that defendant has received a fair trial, free from prejudicial error.

For the reasons stated above, the decision of the Court of Appeals is reversed.

Reversed.