IN THE SUPREME COURT OF NORTH CAROLINA

No. 280A17

Filed 26 October 2018

STATE OF NORTH CAROLINA

v.

JAMES EDWARD ARRINGTON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 803 S.E.2d 845 (2017), vacating a judgment entered on 14 September 2015 by Judge Alan Z. Thornburg in Superior Court, Buncombe County, setting aside defendant's plea agreement, and remanding the case for further proceedings. Heard in the Supreme Court on 14 March 2018.

> *Joshua H. Stein, Attorney General, by Tracy Nayer, Assistant Attorney General, for the State-appellant.*
>
> *Glenn Gerding, Appellate Defender, by James R. Grant, Assistant Appellate Defender, for defendant-appellee.*

NEWBY, Justice.

This case addresses whether, as part of a plea agreement, a defendant can stipulate on his sentencing worksheet that a second-degree murder conviction justified a B1 classification. A defendant may properly stipulate to prior convictions. Defendant here stipulated to the sentencing worksheet showing his prior offenses, one of which was a second-degree murder conviction designated as a B1 offense. In so stipulating, defendant acknowledged that the factual basis of his conviction

involved general second-degree murder (a B1 classification) and did not implicate the exception for less culpable conduct involving an inherently dangerous act or omission or a drug overdose (a B2 classification). Nevertheless, a majority at the Court of Appeals held that the stipulation to this type of second-degree murder was an improper legal stipulation. Because defendant properly stipulated to the facts underlying his conviction and the conviction itself, comparable to his stipulating to his other offenses on the worksheet, the decision of the Court of Appeals is reversed.

On 14 September 2015, defendant entered into a plea agreement, which required him to plead guilty to assault with a deadly weapon inflicting serious injury, felony failure to appear, and having attained habitual felon status. Under the plea agreement, which defendant read and signed, the State consolidated the felony failure to appear charge into the assault with a deadly weapon charge, dismissed a second count of attaining habitual felon status, and allowed defendant to be sentenced in the mitigated range. On the sentencing worksheet, defendant stipulated to multiple previous offenses, including breaking and entering and larceny, possession of drug paraphernalia, assault on a female, driving while impaired, and breaking and entering a motor vehicle, in addition to second-degree murder. As a part of the plea agreement, defendant also stipulated that his 1994 second-degree murder conviction was accurately designated as a B1 offense.

At defendant's sentencing hearing, the court read defendant's plea agreement, which, as noted above, defendant had read and signed:

> The Court: The prosecutor, your attorney and you have informed the Court that the following includes all the terms and conditions of your plea, and I will read the plea arrangement to you now.
>
> The defendant stipulates that he has 16 points and is a Level V for habitual felon sentencing purposes. The state agrees that 14 CRS 267 will be consolidated for sentencing purposes into 13 CRS 63727. The defendant will be sentenced as an habitual felon in the mitigated range and the state will dismiss the charge of obtaining the status of habitual felon in 15 CRS 624.
>
> So does that include all the terms and conditions of your plea?
>
> The Defendant: Yes, sir.

Soon thereafter, the following exchange occurred:

> [Prosecutor]: . . . would the defendant stipulate to a factual basis and allow the state to summarize?
>
> [Defense Counsel]: We will so stipulate.
>
> [Prosecutor]: And would he also stipulate to the contents of the sentencing worksheet that was prepared for habitual sentencing purposes showing him to be a Level V for –
>
> [Defense Counsel]: We will stipulate to the sentencing sheet.

Defense counsel then conceded, "There's nothing I can deny about Mr. [Arrington's] record, absolutely nothing." The State later referenced defendant's prior second-degree murder conviction, noting that "[defendant] killed a nine-year-old child, shot

a nine-year-old child to death. . . . He ended up pleading guilty to second-degree murder . . . ." Defendant did not attempt to explain further the facts of the second-degree murder conviction. After hearing from both parties, the judge determined that defendant had attained habitual felon status and sentenced him in the mitigated range, as agreed.

A divided panel of the Court of Appeals vacated the trial court's judgment and set aside defendant's guilty plea, holding that defendant improperly stipulated to a matter of "pure legal interpretation." *State v. Arrington*, ___ N.C. App. ___, ___, 803 S.E.2d 845, 849 (2017). The Court of Appeals reasoned that, because the legislature divided second-degree murder into two classifications after the date of defendant's second-degree murder offense, determining the appropriate classification of the offense would be a legal question that is thus inappropriate as the subject of a stipulation between the parties. *Id.* at ___, 803 S.E.2d at 848. The Court of Appeals opined that the analysis required here paralleled comparing elements of an out-of-state offense to the corresponding elements of a North Carolina offense, which this Court has determined to be an improper subject of a stipulation. *Id.* at ___, 803 S.E.2d at 849 (citing *State v. Sanders*, 367 N.C. 716, 766 S.E.2d 331 (2014)).

The dissent argued that defendant's stipulation to the second-degree murder conviction listed on his sentencing worksheet did not constitute an improper

stipulation of law. *Id.* at ___, 803 S.E.2d at 852 (Berger, J., dissenting). The dissent asserted that, while the trial court must make the legal determination of defendant's prior record level, a defendant may stipulate to the existence of prior convictions and their classifications, which is what defendant did here. *Id.* at ___, 803 S.E.2d at 852. Thus, the dissent would have affirmed the trial court's judgment. *Id.* at ___, 803 S.E.2d at 852-53. The State filed notice of appeal based on the dissenting opinion.

Every criminal conviction involves facts (i.e., what actually occurred) and the application of the law to the facts, thus making the conviction a mixed question of fact and law. In a jury trial the judge instructs jurors on the law, and the jury finds the facts and applies the law. Similarly, in a guilty plea trial counsel summarizes the facts, and the judge determines whether the facts support a conviction of the pending charge. Consequently, when a defendant stipulates to a prior conviction on a worksheet, the defendant is admitting that certain past conduct constituted a stated criminal offense. It is well settled that a defendant can stipulate to a prior conviction, even though the prior conviction itself involved a mixed question of fact and law. While the statutory classification of this prior conviction is a legal determination, its classification is fact driven. Relying on a defendant's past criminal history, the trial court determines the range of sentence.

Here the crime of second-degree murder has two potential classifications, B1 and B2, depending on the facts of the murder. By stipulating that the former conviction of second-degree murder was a B1 offense, defendant properly stipulated that the facts giving rise to the conviction fell within the statutory definition of a B1 classification. Like defendant's stipulation to every other offense listed in the worksheet, defendant's stipulation to second-degree murder showed that he stipulated to the facts underlying the conviction and that the conviction existed. While defendant does not challenge the other stipulations as improper, he contends he could not legally stipulate that his prior second-degree murder conviction constituted a B1 felony.

"The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court . . . finds to have been proved in accordance with this section." N.C.G.S. § 15A-1340.14(a) (2017). "The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." *Id.* § 15A-1340.14(f) (2017). The State may prove a prior conviction exists by (1) "[s]tipulation of the parties"; (2) "[a]n original or copy of the court record of the prior conviction"; (3) "[a] copy of records maintained by the Department of Public Safety, the Division of Motor

Vehicles, or of the Administrative Office of the Courts"; or (4) "[a]ny other method found by the court to be reliable." *Id.* After the trial court determines the total number of prior record points a defendant has accumulated, the court utilizes N.C.G.S. § 15A-1340.14(c) to establish the prior record level based on the total record points the defendant has accrued.

Before 2012 all second-degree murders were classified at the same level for sentencing purposes. *See* Act of June 28, 2012, ch. 165, sec. 1, 2011 N.C. Sess. Laws (Reg. Sess. 2012) 781, 782. In the 2012 amendments, however, the legislature assigned culpability to convicted offenders depending upon the nature of their conduct at the time of the homicide resulting in their second-degree murder convictions and the intent with which they acted at that time. *See also* ch. 165, pmbl., 2011 N.C. Sess. Laws (Reg. Sess. 2012) at 781. The version of the statute applicable here states:

> (b) . . . Any person who commits second degree murder shall be punished as a Class B1 felon, *except* that a person who commits second degree murder shall be punished as a Class B2 felon in either of the following circumstances:
>
> > (1) The malice necessary to prove second degree murder is based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.

> (2) The murder is one that was proximately caused by the unlawful distribution of [controlled substances], and the ingestion of such substance caused the death of the user.

N.C.G.S. § 14-17(b)(1)-(2) (2015) (emphasis and brackets added).

While the second-degree murder classifications changed, second-degree murder remained a single offense with the same elements and definition. Second-degree murder is defined as "(1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 47 (2000) (citations omitted). Malice may be shown in at least three different ways: (1) actual malice, meaning "hatred, ill-will or spite"; (2) an inherently dangerous act "done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; or (3) " 'that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification.' " *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (quoting *State v. Foust*, 258 N.C. 453, 458, 128 S.E.2d 889, 893 (1963)).

Given the consistent definition of second-degree murder and the 2012 amendments to N.C.G.S. § 14-17, the text of the statute indicates the legislature's intent to elevate second-degree murder to a B1 offense, except in the two limited

factual scenarios when the second-degree murder stems from either an inherently dangerous act or omission or a drug overdose. *See id.* § 14-17(b) ("Any person who commits second degree murder shall be punished as a Class B1 felon, *except* that a person who commits second degree murder shall be punished as a Class B2 felon . . . ." (emphasis added)); *see also State v. Lail*, ___ N.C. App. ___, ___, 795 S.E.2d 401, 408 (2016) ("The plain language of [N.C.G.S. § 14-17] . . . indicates clearly that the legislature intended to increase the sentence for second-degree murder to Class B1 and to retain Class B2 punishment only where either statutorily defined situation exists."), *disc. rev. denied*, 369 N.C. 524, 796 S.E.2d 927 (2017). Thus, the legislature distinguishes between second-degree murders that involve an intent to harm (actual malice or the intent to take a life without justification) versus the less culpable ones that involve recklessness (an inherently dangerous act or omission) or a drug overdose. Generally, a second-degree murder conviction is a B1 offense, *see* N.C.G.S. § 14-17(b), which receives nine sentencing points, *see id.* § 15A-1340.14(b)(1a) (2017). The exception arises when it is shown that the facts of the murder meet one of the statutory exceptions, thereby making the murder a B2 offense, which receives six points for sentencing purposes. *See id.* § 15A-1340.14(b)(2) (2017).

It is undisputed that the State may prove a prior offense through stipulation of the parties. *See id.* § 15A-1340.14(f). This proof by stipulation necessarily includes the factual basis and legal application to the facts underlying the conviction. Once a defendant makes this stipulation, the trial court then makes a legal determination by reviewing the proper classification of an offense so as to calculate the points assigned to that prior offense. Thus, like a stipulation to any other conviction, when a defendant stipulates to the existence of a prior second-degree murder offense in tandem with its classification as either a B1 or B2 offense, he is stipulating that the facts underlying his conviction justify that classification.

Here defendant could properly stipulate to the facts surrounding his offense by either recounting the facts at the hearing or by stipulating to a general second-degree murder conviction that has a B1 classification. Either method of stipulating would allow the trial judge to determine the proper classification of the offense, calculate the total number of points assigned to defendant's prior convictions, and designate defendant's appropriate offender level. By stipulating to the worksheet, defendant simply agreed that the facts underlying his second-degree murder conviction, of which he was well aware, fell within the general B1 category because the offense did not involve either of the two factual exceptions recognized for the B2 classification. *See id.* § 14-17; *see also* N.C.P.I. – Crim. 206.30A (June 2014) (instructing the jury to

determine, as a question of fact, whether malice exists, including the types of malice that dictate whether conduct is a B1 offense). Defendant's factual stipulation then allowed the trial judge to properly classify the offense as B1.

The pertinent facts underlying defendant's second-degree murder conviction are helpful in understanding why he would stipulate that his conviction fell within the standard second-degree murder category. This Court in *State v. Pickens*, 335 N.C. 717, 440 S.E.2d 552 (1994), thoroughly recounted the facts leading to defendant's plea to second-degree murder.[1] In 1991 a jury originally convicted defendant of first-degree murder based on the felony murder rule. The murder arose from a lengthy, heated, and volatile situation. Defendant assaulted his then-girlfriend, Robinson, who called the police and subsequently obtained an arrest warrant. *Id.* at 718-19, 440 S.E.2d at 553. Thereafter, defendant returned to Robinson's apartment and again assaulted her. *Id.* at 719, 440 S.E.2d at 553. At that point, a fight broke out between defendant and Cannady, a man helping move defendant's items out of the apartment, and both men were injured. *Id.* at 719, 440 S.E.2d at 553. Robinson, Cannady, and several others fled to a relative's apartment in the same complex. *Id.* at 719, 440 S.E.2d at 553. The State presented evidence that defendant and his half-

---

[1] The complete name of this case is *State of North Carolina v. Charles L. Pickens, Jr., and James Edward Arrington*. Pickens and defendant were jointly tried for the murder, and they are half-brothers.

brother, Pickens, were both armed and pursued the others. Once the others were inside the second apartment, Robinson looked out a window and saw defendant. Thereafter, two shots came through the window, one of which struck and killed Robinson's young daughter. *Id.* at 719, 440 S.E.2d at 553.

Defendant and Pickens were jointly tried for the murder. *Id.* at 718, 440 S.E.2d at 552-53. Neither defendant nor Pickens contended that the incident resulted from a random shooting, but they instead accused each other of firing the fatal shot. *Id.* at 724, 440 S.E.2d at 556. After defendant was convicted of first-degree murder, this Court granted him a new trial upon concluding that the charges against him were erroneously joined with charges against the other defendant. *See id.* at 728-29, 440 S.E.2d at 559. On remand, defendant pled guilty to second-degree murder based on the same facts. These relevant facts, of which defendant was intimately aware, indicate that his conduct fell within the usual B1 second-degree murder classification and do not support either of the limited factual exceptions recognized in the B2 classification.[2]

Moreover, taking into account the customarily fast pace of a plea sentencing hearing, a common sense reading of the exchange between the parties at trial shows

---

[2] Whether Robinson's daughter was the intended target is irrelevant because the malice with which defendant acted "follows the bullet." *See State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971) (quoting 40 Am. Jur. 2d *Homicide* § 11, at 303 (1968)).

that defendant's stipulation was to the nature of his conduct, which met the requirements of the B1 classification for second-degree murder not covered by the B2 exceptions. Stipulations of prior convictions, including the facts underlying a prior offense and the identity of the prior offense itself, are routine; for instance, defendant here stipulated to numerous other prior convictions and does not contend that those stipulations are improper. Nothing suggests the trial court did not accept defendant's stipulation here to likewise be a standard one that was, as a matter of course, linked to the facts surrounding his second-degree murder conviction.

Because defendant, the person most familiar with the facts surrounding his offense, stipulated to the factual basis for his 1994 second-degree murder conviction, this Court need not require a trial court to pursue further inquiry or make defendant recount the facts during the hearing. *See Sanders v. Ellington*, 77 N.C. 255, 256 (1877) ("When the parties to an action agree upon a matter of fact, they are bound by it, and it is not the duty of the judge to interfere, for he is presumed to be ignorant of the facts. When the parties agree upon a matter of law, they are not bound by it, and it is the duty of the judge to interfere and correct the mistake, if there be one, as to the law, for he is presumed to know the law . . . ."). It is presumed that defense counsel knew the law and advised defendant about the listed offenses when reviewing the plea agreement before defendant accepted the agreement. *See Turner v. Powell*,

93 N.C. 341, 343 (1885) ("It is presumed that [counsel] knew the law and advised his client correctly . . . ."). Further, it is evident that the trial court was satisfied to exercise its authority to accept the parties' stipulation regarding prior offenses as a part of the court's acceptance of the plea arrangement. If the trial court had concern about the nature of the second-degree murder stipulation in light of the date of conviction, the court would have inquired further.

Our analysis here is consistent with that of the Court of Appeals in *State v. Wingate*, 213 N.C. App. 419, 713 S.E.2d 188 (2011), in which that court upheld a stipulation to a particular classification of a crime arising under a statute having two possible classifications. The defendant in *Wingate* stipulated to a sentencing worksheet stating he had previously been convicted of one count of conspiracy to sell or deliver cocaine and two counts of selling or delivering cocaine, all of which were designated on the worksheet as Class G felonies. *Id.* at 420, 713 S.E.2d at 189. Though prohibited under the same criminal statute, selling cocaine constitutes a Class G felony and delivering cocaine constitutes a Class H felony. On appeal the defendant argued that his stipulation to the Class G classification constituted an improper stipulation of law. *Id.* at 420, 713 S.E.2d at 189-90. The Court of Appeals rejected the defendant's argument, holding that "the class of felony for which defendant was previously convicted was a question of fact, to which defendant could

stipulate." *Id.* at 420, 713 S.E.2d at 190. In doing so, the Court of Appeals recognized that the defendant stipulated to a question of fact: that he was convicted of the offense under a theory of *selling* cocaine. *Id.* at 421, 713 S.E.2d at 190. Just as the classifications in *Wingate* involved a question of fact to which the defendant could properly stipulate, defendant here could properly stipulate that the facts underlying his second-degree murder conviction justified its classification as a B1 offense.

In sum, defendant's stipulation here is properly understood to be a stipulation to the facts of his prior offense and that those facts supported its B1 classification. The trial court duly accepted the stipulation. Therefore, the decision of the Court of Appeals vacating the trial court's judgment and setting aside defendant's plea agreement is reversed, and the Court of Appeals is instructed to reinstate the judgment of the trial court.

REVERSED.

Justice ERVIN dissenting.

As a result of its determination that "[d]efendant properly stipulated to the facts of his prior offense and that those facts supported its B1 classification," the Court has decided that the trial court properly classified defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony for purposes of calculating defendant's prior record level based upon the parties' stipulation. In view of my belief that the classification of defendant's prior second-degree murder conviction as a Class B1 felony required the making of a legal determination and that the record presented for our review in this case lacks any support for the trial court's determination to classify defendant's prior second-degree murder conviction as a Class B1 felony other than the parties' stipulation, I believe that the Court of Appeals correctly held that the trial court erred in the course of calculating defendant's prior record level. As a result, I respectfully dissent from the Court's decision in this case.

As the record clearly reflects, defendant entered a plea of guilty to second-degree murder on 1 July 1994. At the time that defendant was convicted of second-degree murder, all second-degree murders were classified in the same manner for sentencing purposes. In 2012, the General Assembly modified the manner in which

the offense of second-degree murder was classified for sentencing purposes, with a judge sentencing a defendant who has been convicted of second-degree murder being required to decide whether the defendant should be sentenced as a Class B1 felon or a Class B2 felon, with that determination hinging upon the type of malice with which the defendant acted at the time that he committed the murder and whether the murder proximately resulted from the distribution of certain controlled substances.

On 14 September 2015, defendant entered a guilty plea to a number of new offenses committed in 2013, resulting in the entry of the judgment that is at issue in this case. At the time that defendant was sentenced for these new convictions, the trial court had to determine defendant's prior record level which, in turn, required the trial court to determine how many prior record points should be assigned to defendant's 1994 second-degree murder conviction. In order to make that determination, the trial court was required to decide whether defendant's second-degree murder conviction should be classified as a Class B1 or a Class B2 felony, with that decision necessarily resting upon a determination of the type of malice with which defendant acted at the time that he committed the second-degree murder for which he was convicted in 1994 given the absence of any indication in the record that defendant's second-degree murder conviction in any way resulted from the distribution of opium, cocaine, or methamphetamine.[1] As I read the record, the only

---

[1] According to well-established North Carolina law, "there are at least three kinds of malice," including "a positive concept of express hatred, ill-will or spite, sometimes called actual, express, or particular malice"; "when an act which is inherently dangerous to human

basis upon which the trial court could have made this determination was the parties' stipulation that defendant's prior second-degree murder conviction should be assigned nine, rather than six, prior record points for purposes of calculating defendant's prior record level.

As a general proposition, "stipulations as to matters of law are not binding upon courts." *State v. McLaughlin*, 341 N.C. 426, 441, 462 S.E.2d 1, 8 (1995) (citations omitted), *cert. denied*, 516 U.S. 1133, 116 S. Ct. 956, 133 L. Ed. 2d 879 (1996); *see also State v. Fearing*, 315 N.C. 167, 174, 337 S.E.2d 551, 555 (1985) (stating that the trial court erred by accepting the parties' stipulation that a child was not competent to testify as a witness given the trial court's failure to make an independent competency evaluation based upon a personal evaluation of the child); *State v. Phifer*, 297 N.C. 216, 226, 254 S.E.2d 586, 591 (1979) (stating that this Court was not bound by the State's stipulation that investigating officers lacked probable cause to suspect that contraband would be found in the glove compartment in a defendant's motor vehicle given "[t]he general rule" that "stipulations as to the law are of no validity" (first citing *Quick v. United Benefit Life Ins. Co.*, 287 N.C. 47, 56-

---

life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; and "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (first citing *State v. Benson*, 183 N.C. 795, 799, 111 S.E. 869, 871 (1922), *disapproved in part on other grounds by State v. Phillips*, 264 N.C. 508, 516, 142 S.E.2d 337, 342 (1965); then citing *State v. Wilkerson*, 295 N.C. 559, 578, 247 S.E.2d 905, 916 (1978); and then quoting *State v. Foust*, 258 N.C. 453, 458, 128 S.E.2d 889, 893 (1963) (quoting *Benson*, 183 N.C. at 799, 111 S.E. at 871)).

57, 213 S.E.2d 563, 569 (1975); then citing *In re Edmundson*, 273 N.C. 92, 97, 159 S.E.2d 509, 513 (1968); then citing *U Drive It Auto Co. v. Atl. Fire Ins. Co.*, 239 N.C. 416, 419, 80 S.E.2d 35, 38 (1954); then citing *Moore v. State*, 200 N.C. 300, 301, 156 S.E. 806, 807 (1931); and then citing *Sanders v. Ellington*, 77 N.C. 255, 256 (1877) (stating that, "[w]hen the parties agree upon a matter of law, they are not bound by it, and it is the duty of the judge to interfere and correct the mistake, if there be one, as to the law, for he is presumed to know the law, and it is his province to declare it")).

For better or worse, the difference between a matter of fact and a matter of law is not always clear. *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (stating that "[t]he classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult"). On the one hand, "[f]acts are things in space and time that can be objectively ascertained by one or more of the five senses or by mathematical calculation" and, "in turn, provide the bases for conclusions." *State ex rel. Utils. Comm'n v. Pub. Staff*, 322 N.C. 689, 693, 370 S.E.2d 567, 570 (1988) (citing *State ex rel. Utils. Comm'n v. Eddleman*, 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987)). On the other hand, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." *State v. Sparks*, 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008) (quoting *In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675 (first citing *Plott v. Plott*, 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985); then citing *Quick v. Quick*, 305 N.C. 446, 452, 290

S.E.2d 653, 657-58 (1982))). As a result, a valid stipulation must concern "things in space and time that can be objectively ascertained by one or more of the five senses," *Utils. Comm'n v. Pub. Staff*, 322 N.C. at 693, 370 S.E.2d at 570, rather than a "determination requiring the exercise of judgment or the application of legal principles," *Sparks*, 362 N.C. at 185, 657 S.E.2d at 658 (quoting *In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675).

A determination of the type of malice with which defendant acted at the time that he committed the killing that led to his 1994 conviction for second-degree murder required the sentencing judge to ascertain both what the defendant did and the legal effect of the defendant's actions. Although the first of these two determinations, which requires an examination of what happened in space and time, is a factual one, the second will, in at least some circumstances, require the sentencing judge to make a legal determination as to what the available factual evidence suggests that the theory of guilt that led to the defendant's conviction would have been. In view of the fact that there has been no prior determination of the theory of malice upon which defendant's second-degree murder conviction rested in this case, the trial court's decision concerning the manner in which defendant's second-degree murder conviction should be classified for the purpose of calculating his prior record level in this case necessarily requires both a factual and a legal determination, with the former being something to which the parties could properly stipulate and the latter being something to which they could not properly stipulate.

As the Court notes, the parties to a criminal action may stipulate to the fact that the defendant had previously been convicted of a criminal offense. N.C.G.S. § 15A-1340.14(f)(1)(2017). Although "conviction" is not statutorily defined in or for purposes of N.C.G.S. 15A-1340.14, that term is ordinarily understood as "the ascertainment of the defendant's guilt by some known legal mode, whether by confession in open court or by the verdict of a jury." *Smith v. Thomas*, 149 N.C. 100, 101, 62 S.E. 772, 773 (1908) (citations omitted); *see also Conviction, Black's Law Dictionary* (10th ed. 2014) (defining "conviction" as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime"). Thus, the "conviction" to which a defendant is entitled to stipulate in accordance with N.C.G.S. § 15A-1340.14(f)(1) is the fact that he or she had been judicially determined to have committed a specific offense rather than the body of factual information underlying that conviction. Although a determination that a defendant has been judicially determined to have committed a specific offense is, in almost all instances, sufficient to permit a subsequent sentencing judge to determine precisely how many prior record points should be assigned to that defendant based upon that prior conviction, the 2012 amendments to N.C.G.S. § 14-17(b) providing for the classification of certain second-degree murders as Class B1 felonies and other second-degree murders as Class B2 felonies preclude a trial judge from determining how many prior record points should be assigned to a defendant based solely upon the fact that he or she had

a prior second-degree murder conviction given that such convictions result in the assignment of different numbers of prior record points depending upon whether the conduct that resulted in the defendant's conviction was encompassed within N.C.G.S. § 14-17(b)(1) or N.C.G.S. § 14-17(b)(2). Although defendant could have properly stipulated to the facts necessary to make the required determination concerning the extent to which his prior second-degree murder conviction was for a Class B1 or a Class B2 felony, the record does not reflect that he ever did so. Instead, the parties simply stipulated to the legal conclusion that defendant's conduct should be treated as coming within the confines of N.C.G.S. § 14-17(b)(1) rather than N.C.G.S. § 14-17(b)(2). For that reason, I am unable to avoid the conclusion that the trial court's decision to classify defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony rested solely upon an acceptance of the parties' legal determination that various facts never presented for the trial court's consideration by stipulation or otherwise sufficed to establish that defendant's conduct was described in N.C.G.S. § 14-17(b)(1), rather than N.C.G.S. § 14-17(b)(2), instead of resting upon an independent analysis of the applicable facts in light of the relevant legal principles. As a result, I am also unable to avoid the conclusion that the trial court's decision to assign nine, rather than six, prior record points to defendant's conviction rested upon an unlawful stipulation to a matter of law.[2]

---

[2] Although the Court treats a second-degree murder conviction as presumptively being a Class B1 felony, the fact that the State has the burden of proving that a particular prior conviction exists, N.C.G.S. § 15A-1340.14(f)(2017) (providing that "[t]he State bears the

-7-

In reaching a contrary conclusion, the Court asserts that defendant's stipulation that his second-degree murder conviction should be classified as a Class B1, rather than a Class B2, felony is "like a stipulation to any other conviction" and notes that defendant "does not challenge the other five stipulations [to prior convictions] as improper." Although the parties to a criminal action are clearly authorized to stipulate to the fact that the defendant has previously been convicted of a particular criminal offense, N.C.G.S. § 15A-1340.14(f)(1), and while the parties to this case did properly stipulate to the existence of all the other convictions reflected upon the prior record worksheet submitted for the trial court's consideration, the classification of defendant's other convictions did not necessitate a legal determination like the one required to determine whether defendant's second-degree murder conviction should be classified as a Class B1 or a Class B2 felony. As a result, the fact that the parties to this case were entitled to stipulate to defendant's other convictions sheds little light on their ability to stipulate to the manner in which defendant's second-degree murder should be treated for prior record level calculation purposes given that, in the aftermath of the 2012 amendments to N.C.G.S. § 14-17(b), the mere fact that the defendant has been convicted of second-degree murder, standing alone, does not answer the question of how many prior record points should

---

burden of proving, by a preponderance of the evidence, that a prior conviction exists"), compels the conclusion that any failure on the part of the State to establish that a defendant's second-degree murder conviction should be treated as a Class B1 felony requires that the relevant second-degree murder conviction be treated as a Class B2 felony for the purpose of calculating the defendant's prior record level.

be attributed to that conviction. Simply put, the parties' stipulation that defendant's second-degree murder conviction should be treated as a Class B1, rather than a Class B2, felony is simply not like other stipulations to the effect that a defendant has been convicted of a particular offense and should not be treated as such.

In reversing the Court of Appeals' decision, the Court essentially concludes that the trial court was entitled to accept the parties' stipulation to the number of prior record points that should be assigned to defendant's second-degree murder conviction on the theory that a defendant who stipulates to having been convicted of a particular offense also stipulates to the facts underlying that conviction. In other words, the Court evidently believes that a defendant who stipulates to the manner in which his or her prior second-degree murder conviction should be classified for prior record level calculation purposes effectively stipulates to the existence of facts sufficient to support a determination that his or her conviction should be classified as either a Class B1 or a Class B2 felony, making it a "factual stipulation" that "allowed the trial judge to properly classify the offense as B1." Aside from the fact that the Court has not cited any authority in support of this expansive definition of a "conviction" as that term in used in N.C.G.S. § 15A-1340.14 or explained why this approach is consistent with the manner in which that term has been utilized in this Court's precedent, it is difficult for me to see what sort of stipulation would not qualify as a stipulation of fact under the Court's logic or how the Court's decision can be squared with this Court's holdings in cases like *Fearing*, 315 N.C. at 174, 337 S.E.2d

at 55 (prohibiting a trial judge from accepting the parties' stipulation that a particular child was competent to testify as a witness); *Phifer*, 297 N.C. at 226, 254 S.E.2d at 591 (stating that the trial court was not bound by the State's stipulation that investigating officers lacked probable cause to believe that contraband was located in a particular automobile); *Quick*, 287 N.C. at 56-57, 213 S.E.2d at 569 (stating that the trial court was not bound by any stipulation that defendant was a "slayer" for purposes of N.C.G.S. § 31A-3(3)); and *In re Edmundson*, 273 N.C. at 97, 159 S.E.2d at 513 (rejecting the parties' stipulation to the effect "[t]hat the agreed statement of facts stipulated herein are all of the facts necessary for the court to make its decision"). As a result, the logic upon which the Court's decision to reverse the Court of Appeals' decision in this case rests does not strike me as persuasive.

I am equally unpersuaded by the Court's reliance upon the decision of the Court of Appeals in *State v. Wingate*, 213 N.C. App. 419, 713 S.E.2d 188 (2011), which upheld the parties' stipulation that defendant had been convicted for selling, as compared to delivering, cocaine. *See* N.C.G.S. § 90-95(b)(1) (2009) (providing that "any person who violates G.S. 90-95(a)(1) with respect to . . . [a] controlled substance . . . shall be punished as a Class H felon, except . . . the sale of a controlled substance classified in Schedule I or II shall be punished as a Class G felony"); *see also State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985) (observing that "the *sale* of narcotics and the *delivery* of narcotics are separate offenses" (citing *State v. Dietz*, 289

N.C. 488, 223 S.E.2d 357 (1976)).[3] Aside from the fact that it is not binding upon this Court, *Wingate* did nothing more than reiterate the longstanding principle that a defendant can stipulate that he or she had been convicted of a particular offense at some point in the past. Thus, *Wingate* has no bearing upon the proper resolution of this case, which revolves around a determination of the identity of the theory under which defendant was convicted of second-degree murder rather than the identity of the crime that defendant was previously convicted of having committed.

In addition to concluding that the stipulation upon which the trial court based its prior record level determination was factual rather than legal in nature, the Court conducts an independent factual analysis based upon the information contained in this Court's decision overturning defendant's original first-degree murder conviction in order to determine that defendant's second-degree murder conviction should be classified as a Class B1, rather than a Class B2, felony for purposes of calculating defendant's prior record level and that defendant had ample justification for believing

---

[3] Admittedly, this Court did state in *State v. Moore*, 327 N.C. 378, 382, 395 S.E.2d 124, 127 (1990), that, "by the statutory language at issue here the legislature has made it *one criminal offense* to 'sell or deliver' a controlled substance under N.C.G.S. § 90-95(a)(1)." On the other hand, after acknowledging the language from *State v. Creason* quoted in the text of this opinion, we stated that *Creason*, 313 N.C. at 129, 326 S.E.2d at 28, and *State v. Dietz*, 289 N.C. 488, 498, 223 S.E.2d 357, 364 (1976) (stating that "the two acts could have been *charged* as separate offenses" (emphasis added)), did "not mandate the conclusion that a defendant may also be *convicted* for two offenses in such situations." *Moore*, 327 N.C. at 382, 395 S.E.2d at 127 (emphasis omitted). As a result, our cases addressing this issue, when harmonized with each other, indicate that, while the sale and delivery of a controlled substance are separate offenses, a defendant cannot be separately convicted of and sentenced for the sale and delivery of the same controlled substance consistent with the relevant legislative intent.

that his second-degree murder conviction reflected his guilt of a Class B1, rather than a Class B2, felony. According to the Court, "defendant pled guilty to second-degree murder based on the same facts" and "[t]hese relevant facts, of which defendant was intimately aware, indicate that defendant's conduct fell within the [B1] second-degree murder classification." Aside from my concern that this portion of the Court's analysis could be construed as appellate fact-finding, the record contains no indication that the information upon which the Court relies in making this determination was ever presented to the trial court, which acts as the fact-finder in structured sentencing proceedings.[4] As a result, I do not believe that the Court's independent evaluation of material that does not appear in the record that has been presented for our review in this case provides any basis for upholding the trial court's decision to treat defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony for the purpose of calculating defendant's prior record level.

Thus, the trial court's decision to classify defendant's prior second-degree murder conviction as a Class B1, rather than a Class B2, felony necessarily rested upon an acceptance of the parties' legal determination that various facts never

---

[4] Admittedly, the prosecutor did state in the course of her sentencing argument that defendant had "killed a nine-year-old child, shot a nine-year-old child to death" and that defendant had entered a plea of "guilty to second-degree murder" after this Court reversed his first-degree murder conviction. However, the statement in question does not constitute evidence and defendant never took any action that can be construed as a stipulation to the accuracy of that statement.

presented for the trial court's consideration by stipulation or otherwise sufficed to establish that defendant's conduct was encompassed in N.C.G.S. § 14-17(b)(1), rather than N.C.G.S. § 14-17(b)(2), instead of upon an independent analysis of the factual information presented for the court's consideration at defendant's sentencing hearing in light of the applicable legal principles. For that reason, the trial court's determination that defendant's second-degree murder conviction should be assigned nine, rather than six, points for the purpose of calculating defendant's prior record level rests solely upon an acceptance of the parties' stipulation to a matter of law, an action which this Court has repeatedly held that trial judges lack the authority to take. As a result, I respectfully dissent from my colleagues' decision to reverse the Court of Appeals' decision and would, instead, affirm the Court of Appeals' decision to vacate defendant's guilty plea and remand this case for further proceedings in the trial court.

Justices HUDSON and BEASLEY join in this dissenting opinion.